THE NORTH CAROLINA STATE BAR v. EARL WHITTED, JR.

No. 8510NCSB1222

(Filed 19 August 1986)

1. **Attorneys at Law § 12— appropriation of client's funds—evidence sufficient**

    Findings of fact by the State Bar that defendant had not notified a client of a draft from an insurance company and had endorsed, cashed and appropriated the draft to his own use were supported by clear, cogent and convincing evidence under the whole record test.

2. **Attorneys at Law § 12— conduct involving moral turpitude—appropriation of client's funds**

    Findings by the State Bar that an attorney failed to notify a client of an insurance company draft, endorsed the check, and appropriated it for his own use supported a conclusion that he had violated the Code of Professional Responsibility in that he had engaged in conduct involving moral turpitude; the argument that the client ultimately suffered no loss is not dispositive.

3. **Attorneys at Law § 12— multiple clients—conflict of interests**

    The State Bar correctly concluded that defendant violated DR 5-105(A) by representing the estates of a passenger and the driver of an automobile in the division of a fund paid by an insurance company where the interests of the claimants were inevitably adverse in that any increase in the share one received from the available fund diminished the available funds on which the other could draw.

**4. Attorneys at Law § 12— failure to disclose—conflict of interest—supported by evidence**

A conclusion by the State Bar that defendant failed to disclose the possible effect of his multiple representation was supported by clear, cogent and convincing evidence and the findings supported the conclusions that defendant did not give full disclosure of the possible effect of his multiple representation and that the multiple representation was not in a situation in which it was obvious that defendant could represent the interests of both estates.

**5. Attorneys at Law § 12— disbarment—no abuse of discretion**

The hearing committee of the State Bar did not abuse its discretion by disbarring defendant where findings and conclusions that defendant had committed illegal acts involving moral turpitude were upheld on appeal and the discipline imposed was within statutory limits. N.C.G.S. § 84-28(b), (c).

Judge JOHNSON dissenting.

APPEAL by defendant from an Order of Discipline of a Hearing Committee of the North Carolina State Bar. Order entered 6 June 1985. Heard in the Court of Appeals 15 April 1986.

Defendant appeals from an order of disbarment.

*A. Root Edmonson for plaintiff appellee.*

*Hulse & Hulse, by Herbert B. Hulse, and Irving Joyner, for defendant appellant.*

WHICHARD, Judge.

I.

Plaintiff, the North Carolina State Bar, filed a complaint against defendant, a practicing attorney. A hearing was held before a Hearing Committee of the Bar's Disciplinary Hearing Commission. Based upon its findings of fact and conclusions of law, the Committee entered an order of discipline which disbarred defendant.

Defendant appeals, arguing: (1) that findings of fact seven and eight are not supported by clear, cogent and convincing evidence; (2) that these findings do not support the Committee's conclusions of law that he violated the Code of Professional Responsibility; (3) that findings of fact twenty-four, twenty-five and twenty-six do not support the conclusion of law that he violated Disciplinary Rule (hereafter DR) 5-105(A); (4) that finding of fact twenty-seven is not based upon clear, cogent and convincing evidence and does

not support the conclusion of law that he violated DR 5-105(C); and (5) that the Committee abused its discretion by ordering that he be disbarred.

We have carefully examined the proceeding, the orders based thereon, and the arguments presented. We find no error or abuse of discretion, and we therefore affirm.

## II.

The Committee found the following facts which are undisputed: Tyrone McCalop was killed while a passenger in an automobile driven by Matt Arthur Moore when the Moore vehicle collided with an automobile driven by Cornelius E. Page. Evelyn Goodman, McCalop's mother, retained defendant, a practicing attorney, to litigate or settle all claims against any persons responsible for the death of her son. Defendant received a med-pay draft from Allstate Insurance Company in the sum of $2,000.00 payable to himself and to Mrs. Goodman as administratrix of her son's estate.

The Committee then made the following findings to which defendant excepts:

7. Defendant did not notify Mrs. Goodman of the receipt of this draft. Defendant placed the necessary endorsements on the draft and cashed it. Mrs. Goodman did not endorse the draft nor did she authorize Defendant to endorse her signature.

8. Defendant failed to deposit the $2,000.00 med-pay draft into a trust account. Defendant appropriated the proceeds of this draft to his own use.

The Committee further made the following findings which are undisputed:

24. By letter dated August 16, 1984, the attorney for American Mutual Fire Insurance Company, insurers responsible for payment of claims against Cornelius E. Page, offered to pay its policy limits, $50,000, to the four occupants of Matt Arthur Moore's automobile if the four occupants could agree on a split of those funds.

25. Upon receipt of this letter, Defendant informed Ms. Goodman. Mrs. Goodman subsequently took Defendant to

meet with Annie R. Moore, mother of Matt A. Moore. Defendant agreed to represent Annie R. Moore and explained to her that she would not get as large a share of the settlement proceeds as the representatives of the other occupants of the car since her son had been driving.

26. Defendant subsequently got both of his clients, Ms. Goodman and Ms. Moore, to agree to a proposed division of the $50,000. Ms. Goodman was to receive $15,333.00 and Ms. Moore $4,000.00.

Finally, the Committee made the following finding to which defendant excepts:

27. Defendant did not fully disclose the possible effect of his multiple representation on his independent professional judgment on behalf of the McCalop and Moore estates.

Based on these and other findings which are not essential to the arguments presented, the Committee entered the following conclusions of law:

The conduct of Defendant, as set forth above, constitutes grounds for discipline pursuant to N.C.G.S. Sec. 84-28(a) and (b)(2) in that Defendant violated the Disciplinary Rules of the Code of Professional Responsibility as follows:

(a) Both by placing a false endorsement on the $2,000 med-pay draft from Allstate Insurance Company and by cashing said draft and appropriating the proceeds to his own use, Defendant engaged in illegal conduct involving moral turpitude in violation of [DR] 1-102(A)(3); engaged in conduct involving dishonest[y], fraud, deceit, or misrepresentation in violation of [DR] 1-102(A)(4); and engaged in other professional conduct adversely reflecting on his fitness to practice law in violation of [DR] 1-102 (A)(6).

(b) By failing to notify his client of receipt of the $2,000 med-pay draft from Allstate Insurance Company upon receipt of said draft, Defendant failed to notify his client of receipt of her funds in violation of [DR] 9-102(B)(1).

(c) By failing to account for the $2,000.00 med-pay draft to his client, Defendant failed to maintain complete rec-

ords of all funds of the client and render appropriate accounts to his client regarding them in violation of [DR] 9-102(B)(3).

(d) By failing to pay any portion of the $2,000.00 med-pay draft to his client when it was received, Defendant failed to promptly pay or deliver to the client as requested by the client the funds in possession of the lawyer which the client was entitled to receive in violation of [DR] 9-102(B)(4).

(e) By failing to maintain a trust account in a North Carolina bank in which to deposit funds of his clients', and by placing his client funds in his general office account, Defendant failed to preserve the identity of all funds of the client paid to the lawyer or law firm in one or more identifiable bank accounts maintained within the state with no funds of the lawyer or law firm deposited therein in violation of [DR] 9-102(A) . . . [.]

(f) By agreeing to represent Mrs. Annie R. Moore in settlement of her wrongful death claim on behalf of her son, Matt Arthur Moore, while representing Mrs. Evelyn Goodman on behalf of her son, Tyrone McCalop, knowing that the interests of both clients in the apportionment of the insurance proceeds conflicted, Defendant failed to decline the proffered employment by Mrs. Annie R. Moore knowing that his independent professional judgment on behalf of his other client, Mrs. Goodman, would be or was likely to be adversely affected by the acceptance of the proffered employment in violation of [DR] 501-5(A).

(g) The above referenced multiple representation was not a situation in which it was obvious that Defendant could represent the interests of both the McCalop and Moore estates as would be permitted by [DR] 5-105(C).

(h) Defendant did not give a full disclosure to Mrs. Goodman of the possible effect of the multiple representation on the exercise of his independent professional judgment as would be required for the multiple representation to be permitted by [DR] 5-105(C).

---

---

Defendant excepted to all the above conclusions except (e).

### III.

[1] Defendant contends that findings of fact seven and eight, *supra*, are not supported by clear, cogent and convincing evidence drawn from the whole record. The standard of proof in attorney discipline and disbarment proceedings is one of "clear, cogent and convincing" evidence. Rules of the North Carolina State Bar, Art. IX, Sec. 14(18). *See In re Palmer*, 296 N.C. 638, 647-48, 252 S.E. 2d 784, 789-90 (1979) (adopting standard); *N.C. State Bar v. Sheffield*, 73 N.C. App. 349, 354, 326 S.E. 2d 320, 323, *cert. denied*, 314 N.C. 117, 332 S.E. 2d 482, *cert. denied*, --- U.S. ---, 88 L.Ed. 2d 338, 106 S.Ct. 385 (1985). "Clear, cogent and convincing describes an evidentiary standard stricter than a preponderance of the evidence, but less stringent than proof beyond a reasonable doubt. . . . It has been defined as 'evidence which should fully convince.' " *Sheffield, supra* (citations omitted).

The standard for judicial review of attorney discipline cases is the "whole record" test. *N.C. State Bar v. DuMont*, 304 N.C. 627, 642, 286 S.E. 2d 89, 98 (1982). "Under the whole record test there must be substantial evidence to support the findings, conclusions and result. . . . The evidence is substantial if, when considered as a whole, it is such that a reasonable person might accept as adequate to support a conclusion." *Id.* at 643, 286 S.E. 2d at 98-99.

Applying the "whole record" test to the contested findings here, we find them supported by clear, cogent and convincing evidence in Mrs. Goodman's testimony. While defendant cites evidence which detracts somewhat from that testimony, this evidence does not render the testimony less than "such that a reasonable person might accept as adequate to support a conclusion." *Id.* "The 'whole record' test does not allow the reviewing court to replace the [Committee's] judgment as between two reasonable conflicting views, even though the court could justifiably have reached a different result had the matter been before it *de novo.*" *Thompson v. Board of Education*, 292 N.C. 406, 410, 233 S.E. 2d 538, 541 (1977). These assignments of error are overruled.

IV.

[2]   Defendant contends that, even if supported by clear, cogent and convincing evidence, findings seven and eight "do not support the conclusions . . . that he violated the Code of Professional Responsibility with the intent to deprive Mrs. Goodman of $2,000.00 or to otherwise defraud her." He argues that there is no evidence that Mrs. Goodman suffered any loss as a result of such conduct, and that "[t]hus, it can hardly be said that [his] conduct involved moral turpitude." We disagree.

DR 1-102(A)(3) of the Code of Professional Responsibility, which was in effect at the time of the events at issue,[1] provides that a lawyer shall not engage in illegal conduct involving moral turpitude. Findings seven and eight establish illegal conduct by defendant in making a false or forged endorsement, N.C. Gen. Stat. 14-120, and in converting to his own use a check that came into his possession while exercising a public trust as an attorney, N.C. Gen. Stat. 14-90. Moral turpitude is generally defined as an "act of baseness, vileness, or depravity in private and social duties which man owes to his fellow men, or to society in general, contrary to the accepted and customary rule of right and duty between man and man." Black's Law Dictionary 910 (rev. 5th ed. 1979). *See also* 7 C.J.S. *Attorney & Client* Sec. 67 at 957-58. Our Supreme Court has used this definition. *Jones v. Brinkley*, 174 N.C. 23, 25, 93 S.E. 372, 373 (1917). The Supreme Court of another state has stated: "The definition of 'turpitude' as anything done 'contrary to justice, honesty, modesty, or good morals' has long been approved by this court." *Marsh v. State Bar of California*, 210 Cal. 303, 307, 291 P. 583, 584 (1930).

We hold that the Committee could conclude that the illegal acts established by the findings here fell within these definitions. Defendant's argument that Mrs. Goodman ultimately suffered no loss from the acts is not dispositive. The acts, when committed, were illegal and could be found to involve moral turpitude. These assignments of error are overruled.

---

1. The Code of Professional Responsibility has since been replaced by Rules of Professional Conduct adopted by the North Carolina State Bar on 26 July 1985 and approved by the Supreme Court of North Carolina on 7 October 1985. All references in this opinion are to rules under the prior code, which governs this case.

## V.

**[3]** Defendant contends that findings twenty-four, twenty-five and twenty-six, *supra*, do not support conclusion of law (f), *supra*, that he violated DR 5-105(A). We disagree.

DR 5-105(A) provides: "A lawyer should decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, except to the extent permitted under DR 5-105(C)." DR 5-105(C) provides that "a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each."

The findings establish that despite his employment to represent Mrs. Goodman in obtaining a settlement from the available $50,000.00 fund defendant undertook to represent Mrs. Moore in obtaining a settlement from the same fund. The interests of claimants Goodman and Moore were inevitably adverse. Any increase in the share one received from the available fund diminished the available funds from which the other could draw. By agreeing to apportion any of the funds to Mrs. Moore, defendant ineluctably reduced the potential share of Mrs. Goodman. The Committee thus properly could conclude that defendant's independent professional judgment on behalf of Mrs. Goodman would be or was likely to be affected by his acceptance of employment by Mrs. Moore. This assignment of error is overruled.

## VI.

**[4]** Defendant contends that finding twenty-seven, *supra*, is not based upon clear, cogent and convincing evidence and does not support conclusions of law (g) and (h), *supra*, that his acceptance of Mrs. Moore's employment was not permitted by DR 5-105(C). We disagree.

Mrs. Goodman testified that defendant did not explain anything to her about "a conflict of interest" or "the need to have any settlement fees distributed" or "an agreement between the occupants of the car as to how the money would be distributed." She stated:

He never said nothing to me about no conflict, nothing at all. He never talked to me about her [Mrs. Moore]. He just mentioned the fact that we were friends, and . . . he would not charge me as much as he did Mrs. Moore. But as far as her— the case— . . . her case, . . . he never discussed that with me, never talked with me.

She subsequently stated that if defendant "had told me there would be conflict, I would have never let him do it because we [were] friends." While she understood that there was a single $50,000.00 fund in which the families of the decedents would share, it was never suggested to her that the more one family received the less the others would.

We hold that the foregoing constituted clear, cogent and convincing evidence, which a reasonable person might accept to support a conclusion, *DuMont, supra,* that defendant failed to disclose the possible effect of his multiple representation. This assignment of error is overruled.

We further hold that this finding fully supports conclusion of law (h) that defendant did not give full disclosure to Mrs. Goodman. Conclusion of law (g), that the multiple representation was not a situation in which it was obvious that defendant could represent the interests of both estates, is not dependent on the disputed finding. It is, however, fully supported by the findings and the evidence. These assignments of error are overruled.

## VII.

[5] Defendant finally contends the Committee abused its discretion by ordering him disbarred. The discipline imposed was within the statutory limits. N.C. Gen. Stat. 84-28(b), (c). This Court recently stated that "so long as the punishment imposed is within the limits allowed by the statute this Court does not have the authority to modify or change it." *N.C. State Bar v. Wilson,* 74 N.C. App. 777, 784, 330 S.E. 2d 280, 284 (1985). It relied on the following from *N.C. State Bar v. DuMont,* 52 N.C. App. 1, 25, 277 S.E. 2d 827, 842 (1981), which was adopted by our Supreme Court in *DuMont,* 304 N.C. at 632, 286 S.E. 2d at 92: "Under the statute, our review is limited to 'matters of law or legal inference.' N.C. Gen. Stat. 84-28(h). Under that statute, we do not find authority for this Court to modify or change the discipline ordered by the commission." The discipline imposed thus is not subject to review.

Assuming, *arguendo*, that we can review the discipline imposed, we decline to find an abuse of discretion. We have upheld the findings and conclusions that defendant committed illegal acts that involved moral turpitude. It was not an abuse of discretion to impose the ultimate sanction of disbarment for such conduct.

Affirmed.

Judge ARNOLD concurs.

Judge JOHNSON dissents.

Judge JOHNSON dissenting.

I respectfully dissent from the majority opinion. The majority opinion aptly states the standard of proof in attorney disbarment proceedings. I do not agree that there was clear, cogent, and convincing evidence to support a conclusion that defendant violated all of the disciplinary rules as alleged. After applying the "whole record" test I cannot agree with the majority opinion that defendant's multiple representation violated DR 5-105(A). Moreover, findings of fact twenty-four (24), twenty-five (25), and twenty-six (26) do not support the Commission's conclusion of law that defendant violated DR 5-105(A). The evidence, when considered as a whole, was not substantial so that a reasonable person might accept it as adequate to support the Commission's conclusion that defendant violated DR 5-105(A). I vote to reverse the Commission's conclusion that defendant violated DR 5-105(A) and remand the order of discipline for reconsideration.