NORTH CAROLINA STATE BAR v. EDWARD DANIELS NELSON

No. 9110NCSB789

(Filed 6 October 1992)

1. **Attorneys at Law § 86 (NCI4th) — attorney discipline — judicial review — standard of proof**

   The record in an appeal from a hearing before the Disciplinary Hearing Commission of the North Carolina State Bar (DHC) contained substantial evidence to support contested findings of fact. The task of the Court of Appeals is not to replace DHC's judgment with its own, but to apply the whole record test and determine whether DHC's findings are properly supported by the record even though the Court might have reached a different result had the matter been before it de novo.

   **Am Jur 2d, Attorneys at Law § 95.**

2. **Attorneys at Law § 86 (NCI4th) — attorney discipline — authority to determine nature of firm**

   Although an attorney appealing an Order of Discipline from the Disciplinary Hearing Commission of the N. C. State Bar (DHC) contended that the DHC lacked authority to deter-

mine whether the firm was a partnership or a professional association, the Court of Appeals was not required to address that question because the appellant could not have had a reasonable good faith belief that he was entitled to additional sums over his salary under either interpretation.

**Am Jur 2d, Attorneys at Law § 95.**

3. **Attorneys at Law § 85 (NCI4th) — attorney discipline — check wrongfully retained — conclusion supported by findings**

The findings of the Disciplinary Hearing Commission of the N.C. State Bar (DHC) were sufficient to support the conclusion that an attorney was not acting upon the advice of counsel when he retained and deposited a check into his personal account and that he did not have a reasonable good faith belief that he had a legitimate claim to any of the funds.

**Am Jur 2d, Attorneys at Law § 95.**

4. **Attorneys at Law § 68 (NCI4th) — attorney discipline — nine month suspension — no abuse of discretion**

The Disciplinary Hearing Commission of the North Carolina State Bar (DHC) did not abuse its discretion by suspending an attorney from the practice of law for nine months where the attorney had withdrawn from a firm and deposited a check from a client in his personal account. Although the attorney contended that neither the DHC nor the State Bar were the proper parties to have heard the case and that the State Bar should not have involved itself in an intra-partnership accounting dispute, the DHC specifically concluded that the attorney engaged in dishonest conduct by retaining the check without a reasonable good faith belief that he was entitled to any funds from the firm. The discipline imposed was within statutory limits. N.C.G.S. § 84-28(b),(c).

**Am Jur 2d, Attorneys at Law §§ 29, 31.**

APPEAL by defendant from order filed 23 January 1991 by Chairman John Shaw before the Disciplinary Hearing Commission of the North Carolina State Bar. Heard in the Court of Appeals 27 August 1992.

In June 1983 the appellant began practicing law with the New Bern law firm of Beaman, Kellum & Stallings (firm). The Disciplinary

Hearing Commission (DHC) found that at the time the appellant was hired, the firm was organized as a professional association and all stock was held by Norman Kellum and Joseph Stallings. During the summer of 1984 Kellum and Stallings met with the appellant to discuss the possibility of the appellant becoming an owner in the firm. Appellant's account of what transpired there differed substantially from separate testimony given by Kellum, Stallings and Bill Hollows, an associate with the firm.

Stallings testified that in June of 1984 Hollows approached him and said that he and the appellant would like to meet with Stallings and Kellum at the end of the day. Stallings agreed and the four men had a brief meeting later that evening. Kellum, Stallings and Hollows each testified that Hollows was present and began the meeting by stating that he and the appellant wished to talk about becoming part owners in the firm. Kellum and Stallings voiced no objection to the idea of Hollows and the appellant becoming owners, but said they would need to discuss it further. Stallings said he would draft some documents for purposes of discussion and get back with the appellant and Hollows. The men also discussed the possibility of changing the firm's name. Upon conclusion of the meeting Kellum, Stallings and Hollows each believed that Hollows and the appellant remained employees of the firm.

Stallings further testified that in late fall of 1984 appellant asked Stallings how the paperwork was coming along. Stallings told the appellant that he had turned the responsibility for drafting the necessary documents over to Hollows and that the matter was in Hollows' hands. Hollows testified that the appellant asked him on more than one occasion whether any of the paperwork had been prepared. Hollows responded each time that the paperwork had not been prepared. Stallings also testified that sometime later he and Kellum met to discuss raising appellant's salary. After discussing the proposed raise with the appellant, appellant's annual salary was increased from $40,000 per year to $48,000 per year.

Appellant testified that one morning in late May or early June of 1984 he received a phone call from Stallings asking him to meet with Stallings and Kellum. He agreed. At the meeting appellant testified that Stallings said that he and Kellum had decided to make the appellant a partner. Accordingly, appellant testified that they agreed that the appellant would receive shares in the firm and an increase in salary from $40,000 per year to $48,000 per

year. Stallings agreed to do the necessary paperwork and appellant assumed that he had been made a partner in the firm. According to appellant, Hollows was not present at that meeting but was present at another meeting between Kellum, Stallings and himself. At that subsequent meeting the four discussed changing the name of the firm. Appellant testified that Kellum said he was not opposed to changing the name of the firm as long as Beaman was kept the first name in the firm name. Stallings did not voice any objection.

The appellant also testified that after his first meeting with Kellum and Stallings he placed an ad in the *News and Observer* announcing his addition to the firm as a partner. He did this because he wanted it announced and he thought it would be good for the firm's business. He did not think he needed the approval of Kellum and Stallings because, in his view, he had already been made a partner. The firm paid for the ad. No meeting was ever called to discuss the ad and no reprimand or disciplinary measures were taken against appellant for submitting the ad to the newspaper.

In the fall of 1984 Kellum also changed the firm's name in the yellow pages of the local telephone book by adding the names of Hollows and the appellant. Kellum authorized the change "[b]ecause [he] thought the work, the paperwork would be done, and those guys would own some shares, have their name on the door, make them work better, feel a part of it." The following year, Kellum had the appellant's name deleted from the listing.

In the fall of 1986 appellant began working on a rate case for the North Carolina Department of Insurance which required him to spend time in Raleigh, rather than at the firm offices in New Bern. During this same period of time Stallings and Kellum became dissatisfied with the appellant's work largely because they felt that the appellant was devoting too much time to the rate case and neglecting his other cases.

On 22 April 1987 the appellant tendered his resignation to Kellum and left the firm to practice in Raleigh. On 11 May 1987 appellant submitted a bill to the North Carolina Department of Insurance for work he performed in the rate case between 30 December 1986 and 30 April 1987. On 21 May 1987 the Department of Insurance issued a check to the plaintiff in the amount of $38,646.62. The appellant received the check during May. He did not inform the firm that he had billed the Department of Insurance or received the check. Rather, he deposited the check into a personal account.

Appellant testified that he retained the funds upon advice of two separate attorneys, Jim Mills and Robert Bode, as an offset for funds he thought the firm owed him. In June of 1987, Kellum and Stallings found out that the Department of Insurance had issued the check to the appellant.

In September of 1987 the appellant filed a suit against the firm and against Kellum and Stallings individually in which he alleged *inter alia* that he had been made a partner and that the firm owed him money. The appellant and the firm entered into a settlement agreement and release effective 23 March 1989 which provided that the appellant could retain all but $12,500 of the Department of Insurance check and that the firm would pay the appellant $4,387.31 in full settlement of all claims the appellant might have.

On 13 December 1989 appellant received a summons and complaint from the DHC of the North Carolina State Bar. After a full hearing, the Commission made the following findings of fact which are contested by appellant:

17. Prior to his departure from the firm, Nelson never made any statements to Hollows, Stallings or Kellum which indicated that Nelson thought he had been made an owner or partner in the firm.

22. Neither Stallings nor Kellum ever promised that Nelson's compensation was or would be based on some portion of fees brought into the firm. Neither Stallings nor Kellum ever promised that Nelson would be entitled to bonuses or any additional compensation other than his annual salary.

24. Prior to his departure from the firm, Nelson never made any statements to Kellum, Hollows, Stallings or to the firm bookkeeper which indicated that Nelson thought he was entitled to any additional sums of money beyond his usual salary.

35. Nelson did not have a reasonable, good faith belief that he was a partner in the firm or that he was entitled to additional sums of money at the time he billed the Department of Insurance and received and retained the $38,646.62 check.

40. Defendant's Ex. B contains a list of legal matters pending when Nelson left B, K & S in April 1987. Defendant's

Ex. G contains a list of fees which Nelson alleged he was due from B, K & S. Nelson did not deliver either exhibit or any copies thereof to Kellum or Stallings at any time prior to instituting the civil action in September 1987.

The DHC also made findings that the appellant acted improperly while handling personal injury cases for Ms. Margaret Slipsager and Mr. Clarence Dewberry. The DHC then concluded:

1. By retaining the $38,646.62 Department of Insurance Company check when he did not have a reasonable, good faith belief that he had a legitimate claim to any funds from B, K & S, Nelson engaged in conduct involving dishonesty, in violation of Rule 1.2(C).

2. By failing to file a notice of claim or lawsuit on Ms. Slipsager's behalf in a timely fashion, Nelson neglected a legal matter entrusted to him in violation of Rule 6(B)(3) and DR 6-101(A)(3) and prejudiced a client in violation of Rule 7.1(A)(3) and DR 7-101(A)(3).

3. By failing to respond to Ms. Slipsager's requests for information respecting her case, Nelson failed to communicate adequately with a client, in violation of Rule 6(B)(1).

4. By failing to file a notice of claim or lawsuit on Dewberry's behalf in a timely fashion, Nelson neglected a legal matter in violation of Rule 6(B)(3) and DR 6-101(A)(3).

5. By falsely assuring Dewberry that a claim had been filed on his behalf and that negotiations were underway respecting Dewberry's claim, Nelson engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of Rule 1.2(C) and DR 1-102(A)(4) and engaged in conduct adversely reflecting on his fitness to practice, in violation of DR 1-102(A)(6).

Accordingly, the Commission entered an Order of Discipline which *inter alia* suspended the appellant from practicing law for nine months. Appellant appeals.

*Carolin Bakewell for the plaintiff-appellee.*

*Cheshire, Parker, Hughes & Manning, by Joseph B. Cheshire, V, and Alan M. Schneider, for the defendant-appellant.*

NORTH CAROLINA STATE BAR v. NELSON

[107 N.C. App. 543 (1992)]

EAGLES, Judge.

I

Initially, we note that appellant raised seventeen assignments of error on appeal. However, appellant failed to support assignments 1, 3, 8, 9, 10, 12, 13, 14, 15 or 16 with reason, argument or authority. Accordingly, those assignments have been abandoned. N.C.R. App. Pro. 28(b)(5).

II

[1] Appellant argues that findings of fact numbers 17, 22, 24, 35 and 40 made by the DHC are not supported by clear, cogent and convincing evidence drawn from the whole record. We disagree and affirm.

The standard of proof and the standard for judicial review for attorney discipline cases is set out in *North Carolina State Bar v. Whitted*, 82 N.C. App. 531, 347 S.E.2d 60 (1986), *affirmed*, 319 N.C. 398, 354 S.E.2d 501 (1987).

> The standard of proof in attorney discipline and disbarment proceedings is one of "clear, cogent and convincing" evidence. Rules of the North Carolina State Bar, Art IX, Sec. 14(18). *See In re Palmer*, 296 N.C. 638, 647-48, 252 S.E.2d 784, 789-90 (1979) (adopting standard); *N.C. State Bar v. Sheffield*, 73 N.C. App. 349, 354, 326 S.E.2d 320, 323, *cert. denied*, 314 N.C. 117, 332 S.E.2d 482, *cert. denied*, --- U.S. ---, 88 L.Ed.2d 338, 106 S.Ct. 385 (1985). "Clear, cogent and convincing describes an evidentiary standard stricter than the preponderance of the evidence, but less stringent than proof beyond a reasonable doubt. . . . It has been defined as 'evidence which should fully convince.' " *Sheffield, supra* (citations omitted).

> The standard for judicial review of attorney discipline cases is the "whole record" test. *N.C. State Bar v. DuMont*, 304 N.C. 627, 642, 286 S.E.2d 89, 98 (1982). "Under the whole record test there must be substantial evidence to support the findings, conclusions and result. . . . The evidence is substantial if, when considered as a whole, it is such that a reasonable person might accept as adequate to support a conclusion." *Id.* at 643, 286 S.E.2d at 98-99.

\* \* \*

"The 'whole record' test does not allow the reviewing court to replace the [Committee's] judgment as between two reasonably conflicting views, even though the court could justifiably have reached a different result had the matter been before it *de novo.*" *Thompson v. Board of Education,* 292 N.C. 406, 410, 233 S.E.2d 538, 541 (1977).

*Whitted,* 82 N.C. App. at 536, 347 S.E.2d at 63 (1986).

On appeal the appellant, both in his brief and during oral argument, highlighted evidence in the record which tends to establish facts *contra* to those found by the DHC. However, this Court's task is not to replace the DHC's judgment with our own. *Id.* Rather, our task is to determine whether after applying the whole record test, the DHC's findings are properly supported by the record even though we might have reached a different result had the matter been before us *de novo.* We hold that the record before us contains substantial evidence to support the contested findings of fact. Accordingly, we find no error.

[2] Appellant also argues that the DHC lacked authority to determine whether the firm was a partnership or a professional association. We are not required to address this question. If the firm was a partnership, the DHC found that the appellant had no reasonable good faith belief that he was a partner. If the firm was a professional association, the DHC found that neither Kellum nor Stallings ever promised the appellant that his compensation would be based on a portion of the fees he brought into the firm, nor did they ever promise him a bonus or additional compensation above his annual salary. Under either interpretation the appellant, according to the DHC's findings, could not have had a reasonable good faith belief that he was entitled to additional sums over his salary. This argument is overruled.

III

[3] Appellant next argues that the DHC wrongfully concluded that appellant acted dishonestly by retaining the Department of Insurance check without a reasonable good faith belief that he had a legitimate claim to any of the funds. We disagree.

Appellant first argues that he acted pursuant to a good faith belief that he was entitled to additional sums from the firm when he retained the Department of Insurance check. This argument

NORTH CAROLINA STATE BAR v. NELSON

[107 N.C. App. 543 (1992)]

is essentially a restatement of the argument addressed under heading II *supra* and we disagree for the reasons stated there.

Appellant next argues that he acted reasonably because he acted in conformity with the advice of counsel. However, the DHC made the following findings of fact: On 11 May 1987 appellant billed the Department of Insurance, which issued a check to the appellant on 21 May 1987. Appellant did not inform the firm that he had billed the Department of Insurance or that he had received the check. The DHC also found that the appellant first sought the advice of legal counsel, James Mills, in late June or early July, and that appellant did not seek the counsel of Bob Bode until September 1987. We note that the back of the check indicates that the appellant negotiated the check on 21 May 1987. DHC's findings are sufficient to support the conclusion that the appellant was not acting upon the advice of counsel when he retained and deposited the Department of Insurance check into his personal account. Accordingly, this argument fails.

IV

[4] In his final assignment, appellant argues that the DHC abused its discretion by suspending the appellant from the practice of law for nine months. We disagree.

Appellant contends that "neither the North Carolina State Bar nor the Disciplinary Hearing Commission were the proper parties to bring or hear this case under the authority granted it in Chapter 84 of the General Statutes of North Carolina and the Rules and Regulations of the North Carolina State Bar." According to the appellant, "[t]here is no rule in the Code of Professional Responsibility or the North Carolina Rules of Professional Conduct that governs accounting procedures for law firm funds and under no circumstances should the State Bar have involved itself in an intra-partnership accounting dispute." In support of its argument appellant cites *Matter of Rice*, 99 Wash. 2d 275, 661 P.2d 591 (1983). During oral argument, however, the appellant conceded that whenever there is a question of dishonesty, beyond the rudimentary need for an accounting to resolve internal law firm disputes, the DHC has jurisdiction to hear matters involving internal law firm disputes. Here, the DHC specifically concluded that the appellant engaged in dishonest conduct by retaining the Department of Insurance check without a reasonable good faith belief that he was entitled to any funds from the firm. This assignment is without merit.

Finally, appellant argues that 'the DHC abused its discretion by suspending him from the practice of law for nine months. "The discipline imposed was within the statutory limits. N.C. Gen. Stat. 84-28(b),(c). This Court [has] stated that 'so long as the punishment imposed is within the limits allowed by the statute this Court does not have the authority to modify or change it.'" *Whitted*, 82 N.C. App. at 539-40, 347 S.E.2d at 65 (quoting *N.C. State Bar v. Wilson*, 74 N.C. App. 777, 784, 330 S.E.2d 280, 284 (1985). This assignment is likewise without merit and therefore overruled.

Affirmed.

Judges JOHNSON and PARKER concur.