THE NORTH CAROLINA STATE BAR, Plaintiff v. MARK A. KEY, ATTORNEY, Defendant

No. COA06-1666

(Filed 18 December 2007)

**1. Attorneys— discipline—violation of Revised Rules of Professional Conduct—sufficiency of findings of fact**

The Disciplinary Hearing Commission did not err in a disciplinary case based upon a violation of the North Carolina Revised Rules of Professional Conduct by determining its findings of fact numbers 28, 29, and 35 were supported by substantial evidence, because: (1) in regard to number 28, it was uncontroverted that the attorney never sought or obtained permission from the court to withdraw, and it was properly classified as a finding of fact even though it was more in the nature of an ultimate finding of fact since it was based upon other evidentiary facts; (2) in regard

to numbers 28 and 29, it was uncontroverted that the attorney left a client who did not have the money to pay him at the courthouse without representation knowing that a probation matter was scheduled for hearing; and uncontested findings of fact numbers 22, 24, 25, 26, 27, and 34 support numbers 28 and 29; and (3) in regard to number 35, it was uncontroverted that the attorney was required to make three additional court appearances to resolve his client's absconder violation and was required to appear at the disciplinary hearing before a judge, and the portion of the finding stating the client was adversely affected by the attorney's refusal to appear on her behalf was an ultimate finding of fact based upon the balance of the finding.

**2. Appeal and Error— preservation of issues—failure to argue—failure to cite authority**

Although defendant attorney assigned error to findings of fact twelve and fifteen in a legal malpractice case, these assignments of error are deemed abandoned, because defendant failed to argue these issues and failed to cite any authority as required by N.C. R. App. P. 28(b)(6).

**3. Appeal and Error— preservation of issues—failure to assign error**

Although defendant attorney presented argument in his brief concerning finding of fact 26 in a legal malpractice case, this issue is not properly before the Court of Appeals, because: (1) defendant did not assign error to this finding as required by N.C. R. App. P. 10(a); and (2) the Court of Appeals declined to invoke the provisions of N.C. R. App. P. 2 to consider this argument.

**4. Attorneys— discipline—violation of Revised Rules of Professional Conduct**

The Disciplinary Hearing Commission did not err in a disciplinary case by concluding that defendant attorney violated Rules 1.16, 1.3, and 8.4(d) of the North Carolina Revised Rules of Professional Conduct, because there was a rational basis in the evidence supporting DHC's conclusion that: (1) the attorney violated Rules 1.3 and 8.4 by refusing to appear on his client's behalf at a probation violation hearing after he had entered a general appearance since willful refusal to appear in contravention of N.C.G.S. § 15A-143 violated the Rule of Diligence to the client and amounted to conduct that has a reasonable likelihood of prejudicing the administration of justice; and (2) the attorney violated

Rule 1.16(c) by failing to seek the court's permission before effectively concluding his representation of the client because she did not have his $200.00 fee for the additional hearing.

Appeal by defendant from Order of Discipline entered 8 June 2006 by the Disciplinary Hearing Commission of the North Carolina State Bar. Heard in the Court of Appeals 30 August 2007.

*The North Carolina State Bar, by Deputy Counsel David R. Johnson, for plaintiff-appellee.*

*Mark A. Key, pro se.*

STEELMAN, Judge.

Because there was substantial evidence from which the Disciplinary Hearing Commission of the North Carolina State Bar could conclude that defendant violated N.C. Rev. R. Prof. Conduct 1.16, 1.3, and 8.4 in violation of the terms of a 2003 Consent Order of Discipline, we affirm the Disciplinary Hearing Commission.

### I: Procedural History

On 9 December 2005, the North Carolina State Bar ("Bar") filed a motion for Order to Show Cause against defendant Mark Anthony Key ("Key"), alleging that Key had failed to comply with a 2003 Consent Order of Discipline by violating the North Carolina Revised Rules of Professional Conduct. Key is an attorney whose license to practice law in the State of North Carolina was suspended for two years in 2003. That suspension had been stayed for three years. The facts upon which the Show Cause order was based arose from Key's representation of Tammy Faircloth on a series of probation violation matters in the Superior Court of Wake County in 2005.

This matter was heard by the Disciplinary Hearing Commission ("DHC") of the State Bar on 5 May 2006. On 26 June 2006, the DHC entered an Order of Discipline, lifting the stay of the suspension of Key's license for a period of ninety days. Key appeals.

### II: Factual Background

On 8 August 2005, Key appeared in the Superior Court of Wake County, representing Faircloth on two probation violations. At the time of the hearing, Faircloth was served with a third probation violation, for absconding supervision ("the absconder violation"). Key requested that Judge Abraham Penn Jones "consider disposing of [all]

charges in one order." Although Key thought that all three charges had been resolved, Judge Jones' written order did not include a disposition of the absconder violation. In late August, Faircloth's probation officer told her that a hearing had been scheduled for 12 September 2005. Faircloth relayed this information to Key, who agreed to appear on Faircloth's behalf.

Faircloth and Key appeared before Judge Stafford G. Bullock on 12 September 2005, where Key admitted the absconder violation on her behalf. Key did not in any manner limit his representation. When the court refused to provide assurances that it would follow a recommendation of the probation officer, Key moved to continue Faircloth's case. The motion was granted, and the hearing was rescheduled for 10 October 2005. Following the continuance, Faircloth agreed to pay Key an additional $200 fee to represent her on the absconder violation.

In preparation for the 10 October 2005 hearing, Key issued a subpoena for a probation officer from Cumberland County to be present at the hearing. On 10 October 2005, Faircloth and her probation officer were present in the courtroom for calendar call. In the common area outside the courtrooms, Faircloth told Key that she did not have the $200 for his fee. Key then released the Cumberland County probation officer from the subpoena, advising the officer that he had not been "fully retained" and would not be representing Faircloth. Shortly thereafter, Key left the Wake County Courthouse to attend a conference at his daughter's school.

When Faircloth's case was called for hearing, Key was not present. Judge Thomas D. Haigwood instructed the courtroom clerk, Sonya Clodfelter, to call Key and tell him that his presence was required in court to resolve Faircloth's absconder violation. After a series of phone calls between Clodfelter and Key, in which Key adamantly stated that he did not represent Faircloth, Judge Haigwood agreed to continue the matter until 9:30 a.m. on 11 October 2005. When Clodfelter called Key back to inform him of the continuance, he became angry and, when told that the judge may issue a show cause order or a bench warrant, stated that "he didn't give a s——" what the judge did.

On 11 October 2005, Key appeared before Judge Haigwood. Both Faircloth and her probation officer also returned to court that morning for the rescheduled hearing. Judge Haigwood continued the matter and issued an order directing Key to show cause why he should

not be held in contempt of court. A second show cause order was subsequently issued on 31 October 2005 directing Key to show cause why he should not be subject to attorney discipline by the court for violating provisions of the Revised Rules of Professional Conduct.

On 15 November 2005, following a two-day hearing, Judge Donald W. Stephens entered two orders, one of criminal contempt and one of attorney discipline. Key appealed these matters to this Court. *See State v. Key*, 182 N.C. App. 624, 643 S.E.2d 444 (affirming the trial court's contempt judgment), *disc. rev. denied*, 361 N.C. 433, 649 S.E.2d 398 (2007); *In re Key*, 182 N.C. App. 624, 643 S.E.2d 452 (affirming the trial court's order of discipline and sanctions), *disc. rev. denied*, 361 N.C. 428, 648 S.E.2d 506 (2007).

### III: Standard of Review

By statute, judicial review of a disciplinary order is limited to "matters of law or legal inference." N.C. Gen. Stat. § 84-28(h) (2005). In examining the record, the reviewing court applies a "whole record" test, which requires this Court to determine that there is "substantial evidence to support the findings, conclusions and result." *N.C. State Bar v. DuMont*, 304 N.C. 627, 643, 286 S.E.2d 89, 98-99 (1982) (citing G.S. § 150A-51(5)). The reviewing court follows a three-step process to determine "if the lower body's decision has a 'rational basis in the evidence.' " *N.C. State Bar v. Talford*, 356 N.C. 626, 634, 576 S.E.2d 305, 311 (2003).

(1) Is there adequate evidence to support the order's expressed finding(s) of fact?

(2) Do the order's expressed findings(s) of fact adequately support the order's subsequent conclusion(s) of law? and

(3) Do the expressed findings and/or conclusions adequately support the lower body's ultimate decision?

*Id.* Section (3) is not at issue in this case.

"In applying the whole record test to the facts disclosed by the record, a reviewing court must consider the evidence which in and of itself justifies or supports the administrative findings and must also take into account the contradictory evidence or evidence from which conflicting inferences can be drawn." *DuMont*, 304 N.C. at 643, 286 S.E.2d at 98-99 (citing *Thompson v. Wake County Bd. of Educ.*, 292

N.C. 406, 233 S.E.2d 538 (1977)). However, the mere presence of contradictory evidence does not eviscerate challenged findings, and the reviewing court may not substitute its judgment for that of the committee. *N.C. State Bar v. Leonard*, 178 N.C. App. 432, 439, 632 S.E.2d 183, 187 (2006), *disc. rev. denied*, 361 N.C. 220, —— S.E.2d —— (2007); *N.C. State Bar v. Nelson*, 107 N.C. App. 543, 550, 421 S.E.2d 163, 166 (1992), *aff'd per curiam*, 333 N.C. 786, 429 S.E.2d 716 (1993). "[S]upporting evidence is substantial if a reasonable person might accept it as adequate backing for a conclusion." *Talford*, 356 N.C. at 632, 576 S.E.2d at 309-10 (citing *DuMont*, 304 N.C. at 643, 286 S.E.2d at 98-99).

## IV. Duty of Attorney in Criminal Cases

An attorney's duty to a client in a criminal case is set forth in N.C.G.S. § 15A-143:

An attorney who enters a criminal proceeding without limiting the extent of his representation pursuant to G.S. 15A-141(3) undertakes to represent the defendant for whom the entry is made at all subsequent stages of the case until entry of final judgment, at the trial stage.

*Id.* (2005).

It is well-settled that an attorney's responsibilities extend not only to his client but also to the court. *Smith v. Bryant*, 264 N.C. 208, 211, 141 S.E.2d 303, 306 (1965).

An attorney not only is an employee of his client but also is an officer of the court. This dual relation imposes a dual obligation. To the client who refuses to pay a fee the attorney must give specific and reasonable notice so that the client may have adequate time to secure other counsel and so that he may be heard if he disputes the charge of nonpayment. To the court, which cannot cope with the ever-increasing volume of litigation unless lawyers are as concerned as is a conscientious judge to utilize completely the time of the term, the lawyer owes the duty to perfect his withdrawal in time to prevent the necessity of a continuance of the case.

*Id.* (internal citations omitted). *See also State v. Crump*, 277 N.C. 573, 591, 178 S.E.2d 366, 377 (1971) (attorney has an independent obligation to the court to continue to represent a client until the court grants permission to withdraw).

## V.  Findings of Fact

**[1]** In his first argument, Key contends that findings of fact 28, 29, and 35 were not supported by the evidence, and that findings of fact 28 and 35 are actually conclusions of law. We disagree.

The challenged findings of fact are as follows:

28. Key did not seek or obtain the Court's permission to withdraw as Faircloth's attorney, nor did he take any steps to protect Faircloth's interests before he effectively concluded his involvement in the case.

29. As a result of Key's refusal to complete his representation, Faircloth was left without representation at the Oct. 10, 2005 hearing on the absconder violation.·

. . . .

35. Faircloth was adversely affected by Key's refusal to appear on her behalf in that she was required to return to court on Oct. 11 and by the fact that she was also subpoenaed to testify at a disciplinary hearing regarding Key conducted by the Court on Nov. 14 and 15, 2005.

Key argues that there was "absolutely no evidence" that he refused to appear in court or that Faircloth was "adversely impacted." Key contends that he never refused to appear and "made a number of efforts to protect [his client's] interest." We review the whole record to determine whether there is substantial evidence to support these findings. *See DuMont*, 304 N.C. at 643, 286 S.E.2d at 98-99.

Before analyzing each of the challenged findings of fact, we note that there are a number of findings of fact contained in the Order of Discipline, which are unchallenged on appeal by Key, and deal with facts that are the same or similar to those contained in the challenged findings of fact. These are:

21. Key did not limit the scope of his representation of Faircloth during the hearing before Judge Bullock on Sept. 12.

22. The hearing on the absconder violation was rescheduled for Oct. 10, 2005.

. . . .

24. On Oct. 5, 2005, Key issued a subpoena to [probation officer] Porter to appear at the Oct. 10 hearing.

25. Before court began on the afternoon of Oct. 10, 2005, Key knew that the matter on the calendar was the absconder violation charge.

26. Shortly before court was to commence on Oct. 10, Faircloth told Key that she did not have the additional $200 fee. Key left the courtroom area, and told Faircloth that he was not going to return to court because she had not paid his fee.

27. Thereafter, Key told Porter than he (Key) had not been "fully retained" by Faircloth and released Porter from the subpoena.

. . . .

32. Judge Haigwood ordered Key to return to court on Oct. 11 to handle Faircloth's case.

. . . .

34. Because Key failed to handle Faircloth's case on Oct. 10, and did not return to court that day, Faircloth's case was continued until the following day.

These unchallenged findings of facts are binding on appeal. *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991).

### A. Finding of Fact 28

We have reviewed the record in this case and find that there is adequate and substantial evidence contained therein to support this finding. It is uncontroverted that Key never sought or obtained permission from the court to withdraw as Faircloth's attorney. It is further uncontroverted that he left Faircloth alone and without representation at the Wake County Courthouse on 10 October 2005, knowing that the probation matter was scheduled for hearing. In addition, findings of fact 22, 24, 25, 26, 27, and 34, uncontested on appeal, are evidentiary facts that support finding of fact 28. Key also contends that finding of fact 28 is really a conclusion of law.

The classification of a determination as either a finding of fact or a conclusion of law is admittedly difficult. As a general rule, however, any determination requiring the exercise of judgment, see *Plott v. Plott*, 313 N.C. 63, 74, 326 S.E.2d 863, 870 (1985), or the application of legal principles, see *Quick v. Quick*, 305 N.C. 446, 452, 290 S.E.2d 653, 657-58 (1982), is more properly classified a conclusion of law. Any determination reached through 'logical reasoning from the evidentiary facts' is more properly

classified a finding of fact. *Quick,* 305 N.C. at 452, 290 S.E.2d at 657-58 (quoting *Woodard v. Mordecai,* 234 N.C. 463, 472, 67 S.E.2d 639, 645 (1951)).

*In re Helms,* 127 N.C. App. 505, 510, 491 S.E.2d 672, 675 (1997).

There are two kinds of facts: Ultimate facts, and evidentiary facts. Ultimate facts are the final facts required to establish the plaintiff's cause of action or the defendant's defense; and evidentiary facts are those subsidiary facts required to prove the ultimate facts.

*Woodard v. Mordecai,* 234 N.C. 463, 470, 67 S.E.2d 639, 644 (1951) (internal citations omitted). Moreover, classification of an item within the order is not determinative, and, when necessary, the appellate court can reclassify an item before applying the appropriate standard of review. *See Helms,* 127 N.C. App. at 510, 491 S.E.2d at 675 (classifying the trial court's neglect, reasonable efforts, and best interest determinations as conclusions of law).

We hold that the DHC properly classified finding of fact 28 as a finding of fact, although since it is based upon other evidentiary facts, it is more in the nature of an ultimate finding of fact, and that the finding is adequately supported by substantial evidence.

### B. Finding of Fact 29

We have reviewed the record in this case and find that there is adequate and substantial evidence contained therein to support this finding. It is uncontroverted that Key left Faircloth alone and without representation at the Wake County Courthouse on 10 October 2005, knowing that the probation matter was scheduled for hearing. In addition, findings of fact 22, 24, 25, 26, 27, and 34, uncontested on appeal, are evidentiary facts that support finding of fact 29.

### C. Finding of Fact 35

We have reviewed the record in this case and find that there is adequate and substantial evidence contained therein to support this finding. It is uncontroverted that Faircloth was required to make three additional court appearances to resolve her absconder violation and was required to appear at the disciplinary hearing before Judge Stephens.

The portion of finding of fact 35 stating that "Faircloth was adversely affected by Key's refusal to appear on her behalf" is an ulti-

mate finding of fact, based upon the balance of finding of fact 35. *See Woodard v. Mordecai*, 234 N.C. at 470, 67 S.E.2d at 644.

**[2],[3]** Key assigned error to findings of fact twelve and fifteen, "in support of which no reason or argument is stated or authority cited." Pursuant to N.C.R. App. P. 28(b)(6) (2007), we deem these assignments of error to be abandoned. Key presented argument in his brief concerning finding of fact 26, to which he did not assign error. Without a proper assignment of error, this finding is not properly before this Court. N.C.R. App. P. 10(a) (2007). We decline Key's invitation to invoke the provisions of Rule 2 of the Rules of Appellate Procedure to consider his arguments concerning finding of fact 26.

This argument is without merit.

## VI: Rules of Professional Conduct

**[4]** In his second argument, defendant contends that he did not violate Rules 1.16, 1.3, and 8.4(d) of the Revised Rules of Professional Conduct, that the evidence supports his position that no violation of the rules occurred, and that the DHC erred in concluding that such violations occurred. We disagree.

With respect to Rules 1.3 and 8.4, Key contends that: (1) this case presents a matter of first impression before this Court; (2) the comments following Rule 1.3 suggest that a violation of diligence occurs when there is a *pattern* of negligent conduct and his refusal to appear on October 10 fails to establish such a violation; (3) the sole basis for the Rule 8.4 charge is "the unsupported allegation that he 'refused to appear' in court on October 10, 2005[;]" and (4) rather than a "refusal to appear," the evidence demonstrates his diligence on Faircloth's behalf. Finally, he argues that mere refusal to appear does not constitute a violation of Rule 8.4 for three reasons: (1) these circumstances are insufficiently egregious, (2) Key had a "good faith" belief that no legal obligation existed, and (3) DHC failed to adduce evidence of harm to Faircloth or of a reasonable likelihood of prejudice to the administration of justice.

The Order of Discipline contained the following conclusions of law:

2. Key entered a general appearance regarding the absconder violation pending against Faircloth on Sept. 12, 2005. Consequently, he could not properly refuse to appear at the Oct. 10, 2005 hearing on the grounds that she had not paid his fee, without first seeking permission to withdraw from the court.

3. Key's conduct as set out herein violated the Revised Rules of Professional Conduct in the following respects:

a. By refusing to appear on Faircloth's behalf at the Oct. 10, 2005 hearing, Key neglected a client matter in violation of Rule 1.3, and engaged in conduct prejudicial to the administration of justice in violation of Rule 8.4(d).

b. By failing to seek Court permission before effectively concluding his representation of Faircloth, Key violated Rule 1.16(c).

The North Carolina Revised Rules of Professional Conduct govern proper terms of an attorney's representation of clients.

Rule 1.16.  Declining or terminating representation.

(b) Except as stated in paragraph (c), a lawyer may withdraw from representing a client if:

(1) withdrawal can be accomplished without material adverse effect on the interests of the client, or:

. . . .

(6) the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled[.]

. . . .

(c) A lawyer must comply with applicable law requiring notice to or permission of a tribunal when terminating a representation. When ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation.

(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client[.] . . . .

N.C. Rev. R. Prof. Conduct 1.16 (2005).

Rule 1.3 requires a lawyer to "act with reasonable diligence and promptness in representing a client." N.C. Rev. R. Prof. Conduct 1.3 (2005). Rule 8.4 proscribes a lawyer from engaging "in conduct that is

prejudicial to the administration of justice." N.C. Rev. R. Prof. Conduct 8.4(d) (2005). Comment 4 to the rule states:

[4] A showing of actual prejudice to the administration of justice is not required to establish a violation of Paragraph (d). Rather, it must only be shown that the act had a reasonable likelihood of prejudicing the administration of justice. . . . The phrase "conduct prejudicial to the administration of justice" in Paragraph (d) should be read broadly to proscribe a wide variety of conduct, including conduct that occurs outside the scope of judicial proceedings.

*Id*, Cmt. 4.

Under the second prong of *Talford*, we must determine whether the order's expressed findings of fact adequately support its subsequent conclusions of law.

[I]n order to satisfy the evidentiary requirements of the whole-record test in an attorney disciplinary action, the evidence used by the DHC to support its findings and conclusions must rise to the standard of clear, cogent, and convincing. Ultimately, the reviewing court must apply all the aforementioned factors in order to determine whether the decision of the lower body, e.g., the DHC, has a rational basis in the evidence.

*Talford*, 356 N.C. at 632, 576 S.E.2d at 310 (internal quotations and citations omitted). Upon review of the record, we find that the evidence relied upon by the DHC in reaching its conclusions of law was "clear, cogent, and convincing."

Having considered the evidence supporting the DHC's findings, as well as any evidence from which conflicting inferences could be drawn, we hold that there is a rational basis in the evidence supporting the DHC's conclusion that Key violated Rules 1.3 and 8.4 by refusing to appear on Faircloth's behalf at the 10 October 2005 hearing. Willful refusal to appear in contravention of N.C.G.S. § 15A-143 violates the Rule of Diligence to the client and amounts to conduct that has a "reasonable likelihood of prejudicing the administration of justice." *See* N.C. Rev. R. Prof. Conduct 8.4, Cmt. 4.

Regarding conclusion of law 3(b), we note that the plain language of Rule 1.16(c) states: "A lawyer *must* comply with applicable law requiring notice to or permission of a tribunal when terminating rep-

resentation." N.C. Rev. R. Prof. Conduct 1.16(c) (2005) (emphasis added). Unlike other rules, Rule 1.16 makes no mention of a "scienter" or "intent" requirement, either in its text or comments. *Cf.* N.C. Rev. R. Prof. Conduct 1.3, cmt. 7 (suggesting an "element of intent or scienter"). Key undertook Faircloth's representation when he appeared and entered admissions on her behalf at the 12 September 2005 hearing, and did not seek or obtain the court's permission to withdraw. Consequently, we find that there is a rational basis in the evidence for the DHC to have concluded that Key violated Rule 1.16(c) by failing to seek the court's permission before effectively concluding his representation of Faircloth.

This argument is without merit.

Defendant's brief addresses only nine of twenty-one original assignments of error. Pursuant to N.C.R. App. P. 28(b)(6) (2007), the remaining assignments of error are deemed to be abandoned.

AFFIRMED.

Judges ELMORE and GEER concur.