NORTH CAROLINA STATE BAR, PLAINTIFF v. CREIGHTON W. SOSSOMON, DEFENDANT

No. COA08-1248

(Filed 2 June 2009)

**1. Appeal and Error— appealability—Rule 60(b) motion made after notice of appeal given—writ of certiorari—attorney malpractice**

Although the Disciplinary Hearing Commission (DHC) did not err in a legal malpractice case by concluding that it lacked jurisdiction to rule upon defendant's N.C.G.S. § 1A-1, Rule 60(b)

motion when such motion was made after the notice of appeal had been given, the Court of Appeals in its discretion treated defendant's first appeal as a petition for writ of *certiorari* given the nonjurisdictional nature of the complaint and found substantial evidence that a reasonable person might accept as adequate to support the conclusions that defendant's conduct was violative of each of the Rules of Professional Conduct found in the DHC's Conclusions of Law, except for Rule 1.6(a) in Conclusion No. 2(e). Although there was adequate factual support for the DHC's legal conclusions that defendant disclosed confidential information and that he did so without obtaining informed consent, the order contained no finding of fact with regard to the issue of whether the disclosure was implicitly required in order to address the reasonable person standard.

2. **Attorneys— malpractice—clear, cogent, and convincing evidence—sufficiency of findings of fact and conclusions of law**

An order in a legal malpractice hearing fell short of containing clear, cogent, and convincing evidence needed to support the discipline imposed upon defendant attorney, and the case was remanded to allow the Disciplinary Hearing Commission to make proper findings of fact and conclusions of law and to reconsider defendant's sanction under N.C.G.S. § 84-28(c).

Appeal by defendant from a disciplinary order entered on 15 April 2008 by the Disciplinary Hearing Commission of the North Carolina State Bar imposing a one-year suspension of defendant's law license and from order entered 16 September 2008 by the Disciplinary Hearing Commission. Heard in the Court of Appeals 19 March 2009.

*Sharpless and Stavola, P.A., by Eugene E. Lester III, for defendant-appellant.*

*N.C. State Bar, by Carmen K. Hoyme and David R. Johnson, for plaintiff-appellee.*

HUNTER, JR., Robert N., Judge.

Creighton W. Sossomon ("defendant") appeals from orders entered 15 April 2008 and 16 September 2008 by the Disciplinary Hearing Commission (the "DHC") of the North Carolina State Bar ("plaintiff"). We affirm in part, reverse in part, and remand to the DHC.

**N.C. STATE BAR v. SOSSOMON**

[197 N.C. App. 261 (2009)]

## I. Background

Defendant was admitted to the North Carolina State Bar in 1969 and has since maintained a practice in the Town of Highlands. Linda David ("Mrs. David" or the "Seller") retained defendant to represent her in the sale of approximately 19 acres of mountain land adjacent to her home as early as 10 October 2003. Mrs. David told defendant that she wished to sell the property only if restrictive covenants limited its use to single-family homes. On 11 October 2003, Mrs. David contracted to sell the property to Sanders Dupree ("Dupree") for $700,000.00. The offer, prepared by a realtor, was on Standard Form 2-T copyrighted July 2002 and approved by the North Carolina Bar Association and the North Carolina Association of Realtors ("Standard Form 2T"). Dupree intended to subdivide the property and establish a subdivision entitled "Old Hemlock Cove."

Among the provisions contained in Standard Form 2-T are numbered paragraphs, some containing blank spaces which require completion by the parties. Section "5. CONDITIONS (b)," reads: "There must be no restriction, easement, zoning, or other governmental regulation that would prevent the reasonable use of the Property for SINGLE FAMILY RESIDENTIAL purposes" ("Condition 5(b)"). Section "12. PROPERTY DISCLOSURE AND INSPECTIONS:" reads "(e) CLOSING SHALL CONSTITUTE ACCEPTANCE OF EACH OF THE SYSTEMS, ITEMS AND CONDITIONS LISTED ABOVE IN ITS THEN EXISTING CONDITION UNLESS PROVISION IS OTHERWISE MADE IN WRITING." Section 14. "CLOSING:" states "Closing shall be defined as the date and time of recording of the deed. All parties agree to execute any and all documents and papers necessary in connection with Closing and transfer of title on or before December 23, 2003, at a place designated by Buyer." In Section 16, "Other Provisions and Conditions," the contract provides for two attachments: Standard Form 2A5-T "Seller Financing Addendum" and an "Addendum B." Addendum B to the contract provides "Buyer and Seller shall mutually agree on restrictive covenants similar to Highlands Point." ("Addendum B"). Highlands Point is an existing single family residential community developed by Dupree. Addendum B also required Dupree to complete a survey showing individual lots as a pre-condition to closing.

Following contractual negotiations, Mrs. David reviewed a draft entitled "Declaration of Restrictive Covenants for Old Hemlock Cove," prepared by her real estate agent, Molly Leonard ("the draft"). The draft was similar to the Highlands Point restrictive covenants in

that it limited homes to "single family" residences. Additionally, the covenants contained terms not present in the 11 October agreement including design criteria, limitations on building materials and/or fixtures, architectural standards, the required approval of an Architectural Review Committee, and the preservation of surrounding woodlands.

On 8 and 10 December 2003, Mrs. David and Dupree subsequently modified Addendum B. The typed and handwritten modifications were labeled "WAIVER." The waiver reads "Buyer hereby acknowledges completion and/or waives contingency items in above referenced attachment of Offer to Purchase and Contract[.]" Condition 5(b) was not referenced in the waiver. Dupree waived the completion of certain preconditions concerning survey work. In exchange, Mrs. David acknowledged receiving a copy of the Highlands Point Declarations, agreed to accept these declarations, and agreed to be appointed to the Architectural Review Committee. Defendant had reviewed the draft with Mrs. David no later than 23 December 2003, after which he faxed a letter to Dupree's counsel regarding possible changes.

A general warranty deed dated 12 January 2004 prepared by defendant from Mrs. David and spouse Keaton David ("Mr. David" collectively, the "Davids") conveyed 19.24 acres of property to Old Hemlock Cove Development, LLC ("2004 Closing"). The deed was recorded simultaneously with a $400,000 purchase money deed of trust. A survey of the property, without interior lot lines, showing only the outer perimeter was also recorded. No restrictive covenants were recorded with these instruments, and the instruments do not mention restrictive covenants.

After the closing, defendant was contacted by the Davids concerning the omitted restrictive covenants. Defendant told the Davids that he believed Old Hemlock's obligation to restrict the use of the property survived the closing and that, if necessary, "they could sue to enforce the obligation." On at least two occasions, one as late as February 2006, defendant contacted counsel for Old Hemlock to request that the covenants be recorded. No restrictive covenants were ever recorded. No subdivision survey was platted.

In July 2006, Dupree sought to sell the unrestricted 19-acre tract to William Shephard ("Shephard"). On 19 July 2006, defendant agreed to represent Shephard in the purchase of the same 19 acres from Old Hemlock ("2006 closing") without first obtaining the Davids' in-

formed consent. Shephard planned to develop multi-story condo-miniums on the property. During their initial meeting, defendant dis-closed to Shephard the existence of a potential cloud on title posed by Dupree's obligations to record restrictive covenants, which could have survived the 2004 closing.

The 2006 closing was not limited to the 19-acre tract. The sale also included the purchase of an adjacent parcel of land from Lloyd Wagner ("Wagner"). Defendant agreed to represent not only Shephard in this 2006 closing, but also Dupree and Wagner (collectively, "2006 clients"). Defendant did not obtain informed consent from Old Hemlock, Dupree, or Shephard, despite the conflicts of interest derived from the prior representation of the Davids.

Defendant contacted the Davids in connection with modifying or waiving the restrictive covenants but did not inform them that he was representing Shephard. The parties dispute whether defendant's representation of Dupree began before or after these conversations. The Davids indicated they would waive the restrictive covenants in return for payment of one million dollars. Defendant's 2006 clients refused this demand and declined to make a counteroffer. Defendant then advised the Davids they could sue Dupree to enforce record-ing the restrictive covenants, but he explained that he could not rep-resent them.

The 2006 closing was scheduled to take place on 12 September 2006, at 11:00 a.m. at defendant's law office. During the closing, Mr. David arrived at defendant's office unannounced and requested copies of the draft restrictions contained within defendant's records of the 2004 closing. After Mr. David obtained these records, Dupree and Shephard asked defendant if the Davids could potentially inter-fere with their transfer of title. Defendant advised them that the Davids could file a *lis pendens* and explained its legal significance. After this explanation, the parties to the 2006 closing offered to drive defendant to the Macon County Courthouse immediately, so their transfer could be recorded before a potential *lis pendens* could be filed. Defendant declined, wanting to wait until after 2:00 p.m. when his next scheduled closing would be completed.

Meanwhile the Davids raced to the Macon County Courthouse and filed a summons without complaint and a *lis pendens* against Old Hemlock Cove and Dupree at 3:00 p.m., identifying the 19-acre tract as the subject of the litigation. Defendant arrived at the Macon County Register of Deeds at 3:30 p.m. After conducting his final title

N.C. STATE BAR v. SOSSOMON

[197 N.C. App. 261 (2009)]

examination and learning of the *lis pendens*, defendant did not record any instruments. The Davids subsequently filed a complaint against Dupree and Old Hemlock in Macon County Superior Court on 2 October 2006, alleging breach of contract.

Following the failed 2006 closing, the following events occurred. Pursuant to a Letter of Notice dated 4 January 2007, the North Carolina State Bar informed defendant it had received a grievance from Dupree. Defendant responded to the grievance on 22 January 2007. The Davids filed a professional negligence claim against defendant in Macon County Superior Court on 24 January 2007. In his amended answer, filed 16 April 2007, defendant filed a third-party complaint against Dupree and Old Hemlock seeking indemnity and contribution.

The complaint in the case *sub judice* was filed 29 June 2007 and heard before the DHC on 29 February 2008 and 1 March 2008. The Chair of the DHC filed its "Findings Of Fact, Conclusions Of Law, And Order Of Discipline" on 15 April 2008. Pursuant to N.C. Gen. Stat. § 84-28(b)(2), the DHC found defendant's conduct violated the following Revised Rules of Professional Conduct (the "Rules"): Rule 1.3 "Diligence"; Rule 1.4(a)&(b) "Communication"; Rule 1.6(a) "Confidentiality of information"; Rule 1.8(b), "Conflict of interest"; and Rule 1.9(a) "Duties to former clients."

The DHC's conclusions of law read as follows:

(a) By failing to ensure that the single family lot restriction requested by Linda David was in effect and enforceable upon transfer of the property to Old Hemlock/Dupree, Sossomon failed to act with reasonable diligence in representing a client in violation of Rule 1.3;

(b) By failing to inform Linda David prior to the January 2004 closing of the legal effect of failing to execute and record the restrictive covenants, Sossomon failed to explain a matter to the extent reasonably necessary to permit his client to make informed decisions regarding the representation in violation of Rule 1.4(b);

(c) By undertaking representation of Shephard and Old Hemlock/Dupree to transfer the land free from the restrictions that the Davids sought to place on the property without obtaining Linda David's informed consent, confirmed in writing, Sossomon represented persons whose interests were

materially adverse to the interests of a former client, without the former client's informed consent confirmed in writing, in violation of Rule 1.9(a);

(d) By negotiating with his former client, Linda David, about waiving the property restrictions without disclosing that he was representing Shephard and Ol [sic] Hemlock/Dupree, Sossomon failed to inform his former client of a circumstance for which her informed consent was required in violation of Rule 1.4(a);

(e) By discussing with Shephard some of the terms of the prior contract between Old Hemlock/Dupree and Linda David without first obtaining David's informed consent to this disclosure, Sossomon revealed information acquired during the professional relationship with a client in violation of Rule 1.6(a); and

(f) By disclosing to the Davids that the closing in the Shephard/Dupree transaction was imminent without obtaining Shephard and Old Hemlock/Dupree's informed consent to this disclosure, Sossomon revealed information acquired during the professional relationship with a client in violation of Rule 1.6(a), and used information relating to the representation of a client to the disadvantage of the client in violation of Rule 1.8(b).

Based on authority pursuant to N.C. Gen. Stat. § 84-28(c)(2), the DHC ordered defendant be "hereby suspended from the practice of law in North Carolina for one year[.]" Defendant agreed with the DHC that he violated Rule 1.9 conflict of interest (Conclusion (c), above) but appealed the remaining findings.

After filing notice of appeal on 8 May 2008 ("first appeal"), defendant failed to timely file a notice that arrangements to obtain a transcript had been made or to obtain the transcript under Rule 18(b)(2) & (3) and Rule 7 of the Rules of Appellate Procedure. After the expiration of the time period as provided by the Rules, plaintiff moved for dismissal on 31 July 2008, which was subsequently granted by the DHC on 5 August 2008. Following this dismissal, defendant moved for relief from the order dismissing the appeal on 11 August 2008 on grounds of excusable neglect. Defendant filed a motion for stay of the order of discipline pending his appeal. Subsequently, he filed a second notice of appeal on 2 September 2008 ("second appeal"). The motion for relief was denied by the DHC; however, in its

order, the DHC granted the stay and stated that but for its lack of jurisdiction, it would have granted defendant's motion for relief.

## II.  Appellate Jurisdiction

### 1.  Procedural History of the Motion to Dismiss Appeal

**[1]** As filed, this Court has no jurisdiction to consider the merits of defendant's first appeal, which was dismissed by the DHC. As filed, this Court would have jurisdiction only to consider defendant's second appeal, the denial of defendant's motion for relief from the order dismissing the first appeal. Were the Court in the second appeal to reverse the DHC's denial of the order granting relief, then defendant would have to begin again with his initial appeal.

In examining the merits of the second appeal, the record shows the following facts. Defendant's counsel contacted the court reporter to prepare the transcript in a timely manner. After time had elapsed, the court reporter informed counsel that the transcript had not been sent because payment had not yet been received. Payment for the transcripts was previously arranged with a third-party insurer. The insurer admitted it failed to make prompt payment, despite instructions from counsel to the contrary.

The chair of the DHC concluded that dismissal of defendant's appeal was appropriate according to Rule 25(a):

> Motions to dismiss shall be supported by affidavits or certified copies of docket entries which show the failure to take timely action or otherwise perfect the appeal, and shall be allowed unless compliance or a waiver thereof is shown on the record, or unless the appellee shall consent to action out of time, *or unless the court for good cause shall permit the action to be taken out of time.*

N.C. R. App. P. 25(a) (2007) (emphasis added). In his motion filed 11 August 2008, defendant argued that good cause exists to afford relief from the order dismissing the complaint and to extend the time to file the transcript. Plaintiff's brief does not address defendant's good cause argument. We agree that good cause existed to allow the transcript to be filed out of time. Unfortunately, at the time the request was made, the DHC had already dismissed the appeal.

Defendant also requested DHC relief from dismissal pursuant to Rule 60(b) of the North Carolina Rules of Civil Procedure. The basis for the 60(b) motion included excusable neglect in that defendant's

counsel did not receive notice of plaintiff's motion to dismiss appeal or the affidavits supporting dismissal until after the 5 August 2008 Order Dismissing Appeal was granted. Counsel had returned from vacation to find the relevant documents awaiting him. Defendant's counsel has acknowledged full responsibility in the matter. Nonetheless, defendant contends these events deprived him of a notice and hearing.

The DHC filed its order on 11 September 2008, whereby it "neither allowed nor denied" defendant's motion, for lack of jurisdiction. Conclusions of law set forth in the order stated that defendant's notice of appeal on 8 May 2008 deprived the DHC of jurisdiction to allow or deny his Rule 60(b) motion. Pursuant to *Talbert v. Mauney*, 80 N.C. App. 477, 478-79, 343 S.E.2d 5, 7-8 (1986), however, the DHC also stipulated in its order that it would have otherwise allowed defendant's motion.

2. Appellate Review

We affirm the DHC's conclusion that it lacked jurisdiction to rule upon defendant's Rule 60(b) motion. "The trial court does not have jurisdiction . . . to rule on motions pursuant to Rule 60(b) where such motion is made after the notice of appeal has been given." *York v. Taylor*, 79 N.C. App. 653, 655, 339 S.E.2d 830, 831 (1986). We note that no motion for relief was filed with this Court; however, we are guided by the following principle. "The imperative to correct fundamental error, however, may necessitate appellate review of the merits despite the occurrence of default." *Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co.*, 362 N.C. 191, 196, 657 S.E.2d 361, 364 (2008).

We examine the rule violation in light of *Dogwood Dev. v. White Oak Transp. Co.* ("Dogwood Analysis"). "[D]efault under the appellate rules arises primarily from the existence of one or more of the following circumstances: (1) waiver occurring in the trial court; (2) defects in appellate jurisdiction; and (3) violation of nonjurisdictional requirements." *Id.* at 194, 657 S.E.2d at 363. We must first determine whether the appellate rule violation is jurisdictional or nonjurisdictional, because a jurisdictional default renders the Dogwood Analysis moot under N.C. R. App. P. 2. "[I]n the absence of jurisdiction, the appellate courts lack authority to consider whether the circumstances of a purported appeal justify application of Rule 2. . . . Accordingly, Rule 2 may not be used to reach the merits of an appeal in the event of a jurisdictional default." *Id.* at 198, 657 S.E.2d at 365

(citations omitted). If the violations are nonjurisdictional, on the other hand, the Dogwood Analysis imposes three requirements: (1) "[T]he court should first determine whether the noncompliance is substantial or gross under Rules 25 and 34." *Id.* at 201, 657 S.E.2d at 367; (2) "If it so concludes, it should then determine which, if any, sanction under Rule 34(b) should be imposed." *Id.*; and (3) "[I]f the court concludes that dismissal is the appropriate sanction, it may then consider whether the circumstances of the case justify invoking Rule 2 to reach the merits of the appeal." *Id.*

Although the DHC's legal conclusions concerning Rule 60(b) were indeed correct, Rule 60(b) was not the exclusive basis for defendant's motion for relief. His "good cause" argument constituted two additional components of the motion under Rules 25 and 27(c). The Rule 27(c) component can be dismissed at the outset as a jurisdictional default. *See id.* at 198, 657 S.E.2d at 365 ("As the Commentary to Rule 2 provides, our appellate courts have authority to suspend the rules in exceptional situations ' "except as otherwise expressly provided by these rules" ' . . . *this 'refers to the provision in Rule 27(c) that the time limits for taking appeal . . . may not be extended* by any court.' ") (citation omitted) (emphasis added).

The third component of defendant's motion, stemming from his failure to comply with Rule 7, was brought pursuant to Rule 25. Since Rule 25 will inevitably be considered in the first step of the Dogwood Analysis, the true genesis of this default lies in the Rule 7 violation it sought to cure.

Rule 7 is a nonjurisdictional defect.[1] *See Lawrence v. Sullivan,* 192 N.C. App. 608, 617, 666 S.E.2d 175, 181 (2008) ("[W]e do not deem

---

1. (1) *Civil cases.* Within 14 days after filing the notice of appeal the appellant shall arrange for the transcription of the proceedings or of such parts of the proceedings not already on file, as the appellant deems necessary, in accordance with these rules, and shall provide the following information in writing: a designation of the parts of the proceedings to be transcribed; the name and address of the court reporter or other neutral person designated to prepare the transcript; and, where portions of the proceedings have been designated to be transcribed, a statement of the issues the appellant intends to raise on appeal. The appellant shall file the written documentation of this transcript arrangement with the clerk of the trial tribunal, and serve a copy of it upon all other parties of record, and upon the person designated to prepare the transcript. If the appellant intends to urge on appeal that a finding or conclusion of the trial court is unsupported by the evidence or is contrary to the evidence, the appellant shall file with the record on appeal a transcript of all evidence relevant to such finding or conclusion. If an appellee deems a transcript of other parts of the proceedings to be necessary, the appellee, within 14 days after the service of the written documentation of the appellant, shall arrange for the transcription of any additional parts of the pro-

these *nonjurisdictional* failures [under N.C. R. App. P. 7(a)(1)] on the part of plaintiff to be so egregious that they warrant dismissal of plaintiff's appeal[.]"). *Id.* (emphasis added). We accordingly limit our Dogwood Analysis to that part of defendant's motion brought pursuant to Rule 25, based upon the nonjurisdictional defect arising under Rule 7.

In *Dogwood*, our Supreme Court gave three factors to consider "among others," when "determining whether a party's noncompliance with the appellate rules rises to the level of a substantial failure or gross violation[.]" 362 N.C. at 200, 657 S.E.2d at 366: (1) "whether and to what extent the noncompliance impairs the court's task of review[;]" *id.*; (2) "whether and to what extent review on the merits would frustrate the adversarial process[;]" *id.* at 200, 657 S.E.2d at 366-67; and (3) "[t]he court may also consider the number of rules violated, although in certain instances noncompliance with a discrete requirement of the rules may constitute a default precluding substantive review." *Id.* at 200, 657 S.E.2d at 367.

Regarding the first factor, any impairment of this Court's ability to review the merits is minimal. To guide our determination, we have a complete and accurate record on appeal and copies of the evidence made available to the DHC. As such, the merits are identifiable. *C.f. Sugar Creek Charter School, Inc. v. Charlotte-Mecklenburg Bd. of Educ.*, 195 N.C. App. 348, ——, 673 S.E.2d 667, 674 (2009). ("We note that Defendants include no authority in their brief in support of several of the following arguments . . . . Applying the *Dogwood Dev.* guidelines, we choose to address most of Defendants' arguments on the merits despite this violation of our appellate rules[.]").

Most notable, however, is that this case presents the unique circumstance whereby this Court's task of review has been eased. Although defendant's Rule 60(b) motion is not reviewable on its merits, it is not irrelevant.

After appeal, the trial court is without jurisdiction to grant relief under Rule 60. But the trial court does have limited jurisdiction

---

ceedings or such parts of the proceedings not already on file, in accordance with these rules. The appellee shall file with the clerk of the trial tribunal, and serve on all other parties of record, written documentation of the additional parts of the proceedings to be transcribed; and the name and address of the court reporter or other neutral person designated to prepare the transcript.

In civil cases and special proceedings where there is an order establishing the indigency of a party entitled to appointed appellate counsel, the ordering of the transcript shall be as in criminal cases where there is an order establishing the indigency of the defendant as set forth in Rule 7(a)(2). N.C. R. App. P. 7(a)(1).

to consider a Rule 60(b) motion after an appeal for the purpose of indicating what action it could take if it did have jurisdiction. *Such an indication can be an aid to the appellate court, since it can review the trial court's indication on the Rule 60(b) motion at the same time it considers other assignments of error.*

1 Woodlief, *Shuford N.C. Civil Prac. and Proc.* § 60:11, 1131 (6th ed. 2003) (emphasis added) (footnotes omitted). Accordingly, the DHC acknowledged that it would have otherwise granted defendant's Motion for Relief from Order Dismissing Appeal. This type of legal conclusion is also relevant to the second factor because it protects an appellee from being "left without notice of the basis upon which an appellate court might rule." *Viar v. N.C. Dep't of Transp.*, 359 N.C. 400, 402, 610 S.E.2d 360, 361, *reh'g denied*, 359 N.C. 643, 617 S.E.2d 662 (2005). There has been no showing of any procedural burden on the part of plaintiff should review of the merits be allowed. Plaintiff's brief did not address defendant's argument that good cause exists under the Rule 25 exception, leaving support to the notion that any frustration of the adversarial process remains minimal under the second factor as well.

As to the third factor, the violations of the deadlines prescribed by Rule 18(b)(3) & (d)(2) were the direct consequence of the Rule 7 violation. Despite the existence of multiple violations, none occurred independent of each other.

The three articulated factors are not exclusive, and other factors can be gleaned from our case law. In *Harvey v. Stokes*, 137 N.C. App. 119, 527 S.E.2d 336 (2000), we considered whether "a court which is deciding a motion to dismiss an appeal, [can] determine whether appellant has contributed to the delay in preparation of a proposed record on appeal." *Id.* at 124, 527 S.E.2d at 340. In *Lawrence v. Sullivan*, the record did not contain an explanation of the court reporter's delay in producing the transcript or a reason for the appellant's failure to seek an extension of time. 192 N.C. App. at 618, 666 S.E.2d at 181. Thus, the appellants' attorney was found to have violated Rule 7(a)(1). *Id.* Like the attorney in *Lawrence*, defendant's counsel was responsible for the Rule 7 violations. Unlike *Lawrence*, however, the record provides both an explanation from the court reporter and an excuse for counsel's delay. Regardless of its acceptability, providing an excuse bolsters reasons given in *Lawrence* for allowing review.

Another factor for determining whether noncompliance rises to the level of substantial failure or gross violation is whether, prior to

the *Dogwood* ruling, there was a "long tradition of dismissing such assignments of error." *Odom v. Clark*, 192 N.C. App. 190, 194, 668 S.E.2d 33, 35 (2008). Prior to *Dogwood*, there is authority that supports not dismissing upon a Rule 7 error. *See, e.g.*, *Thompson v. Town of Warsaw*, 120 N.C. App. 471, 475 n.1, 462 S.E.2d 691, 693 n.1 (1995) ("*At most*, failing to comply with Rule 7 should result in excluding the transcript from the record.") (Wynn, J., concurring in part (emphasis added)) (dissenting in "that part which assesses costs against appellant's attorney for violating Rule 7"), *id.* at 474, 462 S.E.2d at 693.

Most notable, however, is one of the principles established by this Court in *Lawrence*: " '[F]ail[ing] to seek an extension of time in which to produce [the] transcript is not a valid reason to dismiss [appellant's] appeal.' " *Lawrence* at 617, 666 S.E.2d at 181 (citation omitted). Moreover, "*Dogwood* instructs that in most cases the appellate courts should impose less drastic sanctions than dismissal and reach the merits of the case." *Odom*, 192 N.C. App. at 194, 668 S.E.2d at 35. We apply these rules together to hold no egregious error exists to constitute substantial failure or gross violation of Rule 7's nonjurisdictional requirements.

> [T]he appellate court may not consider sanctions of any sort when a party's noncompliance with nonjurisdictional requirements of the rules does not rise to the level of a "substantial failure" or "gross violation." In such instances, the appellate court should simply perform its core function of reviewing the merits of the appeal to the extent possible.

*Dogwood*, 362 N.C. at 199, 657 S.E.2d at 366.

Although not required to consider the appellant's appeal as a petition for writ of certiorari, this Dogwood Analysis informs our treatment of defendant's appeal. If we were to reverse the Rule 60(b) motion decision and grant an extension of time to prepare the record, a second appeal would be necessitated. Given the non-jurisdictional nature of the complaint, this Court in its discretion will treat defendant's first appeal as a petition for writ of certiorari.

In treating the first appeal as a petition for writ of certiorari, this Court may, in its discretion, consider all or part of the assignments of error raised by the appellant. Based upon our review of the record under the standard of review discussed *infra*, we find substantial evidence that a reasonable person might accept as adequate to support the conclusions that defendant's conduct was violative of each of the

Rules of Professional Conduct found in the DHC's Conclusions of Law, except for Rule 1.6(a) in Conclusion No. 2(e). We find adequate factual support for the DHC's legal conclusions that defendant disclosed confidential information, and that he did so without obtaining informed consent. This finding does not alone support the decision that defendant violated Rule 1.6(a). Rule 1.6(a) contains an important exception that was not addressed by the DHC in either its findings or conclusions: "disclosure . . . impliedly authorized in order to carry out the representation[.]" Revised Rules of Professional Conduct, Rule 1.6(a) (2009). In order to conclude defendant violated Rule 1.6(a), the DHC must address all three of the exceptions to the disclosure of confidential information. Because the order contains no finding of fact with regard to the issue of whether the disclosure was implicitly required, we cannot say that the order has properly addressed the rule to the required "reasonable person" standard. A reasonable person would require some factual finding on the issue of "implicit disclosure" before reaching a conclusion of law.

Put differently, with this sole exception, the DHC properly concluded defendant committed the offense or misconduct. *N.C. State Bar v. Talford*, 356 N.C. 626, 632, 576 S.E.2d 305, 309-10 (2003). We find that the DHC's conclusions derive from complications which inherently flow from a violation of Rule 1.9, which both parties agree was violated in this case. The representation of a second client would have necessarily impeded defendant's ability to satisfactorily complete the representation of the previous client. Negotiating a compromise or settlement between two clients is always problematic. Failing to completely disclose all facts to both clients creates ethical dilemmas such as those faced by defendant. Zealous representation of one client shortchanges the other, and disclosure of confidential information to one violates a basic duty to the other. Defendant's defense that his representation of the Davids had ended with the closing is undermined by his efforts to see that restrictive covenants were subsequently recorded. It is clear that the prior representation had not ended, when the second representation began. Defendant drank the hemlock of multiple representations too often.

[2] The remainder of our grant of the writ is limited to only one of the four assignments of error presented by defendant: Did the DHC err in failing to find that a lesser sanction, other than a one-year suspension of defendant's law license, would be sufficient discipline and protect the public? In the language of *Talford*, 356 N.C. at 634, 576 S.E.2d at 311, "(2) Do the order's expressed finding(s) of fact adequately sup-

port the order's subsequent conclusion(s) of law? and (3) Do the expressed findings and/or conclusions adequately support the lower body's ultimate decision?"

### III. Standard of Review

"By statute, judicial review of a disciplinary order is limited to 'matters of law or legal inference.' " *N.C. State Bar v. Key*, 189 N.C. App. 80, 83, 658 S.E.2d 493, 496 (2008) (quoting N.C. Gen. Stat. § 84-28(h) (2005)). The Court of Appeals must apply the "whole record test." *N.C. State Bar v. DuMont*, 304 N.C. 627, 642-43, 286 S.E.2d 89, 98 (1982). "Under the whole record test there must be substantial evidence to support the findings, conclusions and result. The evidence is substantial if, when considered as a whole, it is such that a reasonable person might accept as adequate to support a conclusion." *Id.* at 643, 286 S.E.2d at 98-99 (citation omitted).

> The whole-record test also mandates that the reviewing court must take into account any contradictory evidence or evidence from which conflicting inferences may be drawn. Moreover, in order to satisfy the evidentiary requirements of the whole-record test in an attorney disciplinary action, the evidence used by the DHC to support its findings and conclusions must rise to the standard of "clear, cogent, and convincing."

*Talford*, 356 N.C. at 632, 576 S.E.2d at 310 (citations omitted).

"[T]he Supreme Court set forth a three-step process to determine 'if the lower body's decision has a "rational basis in the evidence." ' " *Key*, 189 N.C. App. at 84, 658 S.E.2d at 497 (quoting *Talford*, 356 N.C. at 634, 576 S.E.2d at 311): "(1) Is there adequate evidence to support the order's expressed finding(s) of fact? (2) Do the order's expressed finding(s) of fact adequately support the order's subsequent conclusion(s) of law? and (3) Do the expressed findings and/or conclusions adequately support the lower body's ultimate decision?" *Talford*, 356 N.C. at 634, 576 S.E.2d at 311.

This three-step process "must be applied separately" to each disciplinary phase: (1) the " 'adjudicatory phase' (Did the defendant commit the offense or misconduct?)," and (2) the " 'dispositional phase' (What is the appropriate sanction for committing the offense or misconduct?)." *Id.*; *but cf. N.C. State Bar v. Culbertson*, 177 N.C. App. 89, 97, 627 S.E.2d 644, 650 (2006) ("[T]he DHC's choice of discipline is reviewed under an abuse of discretion standard.").

IV. The Disciplinary Order

Because the dispositional analysis is not made until after the adjudicatory phase, both the findings of fact and conclusions of law from the first phase are incorporated into the disciplinary phase. This two-step process is reflected in the DHC's order. For its dispositional analysis, the DHC made additional findings of fact and conclusions of law regarding discipline, basing them upon the "foregoing" findings of fact made in its adjudicatory phase. " 'The classification of a determination as either a finding of fact or a conclusion of law is admittedly difficult.' " (*Key*, 189 N.C. App. at 88, 658 S.E.2d at 499) (quoting *In re Helms*, 127 N.C. App. 505, 510, 491 S.E.2d 672, 675 (1997)). "Moreover, classification of an item within the order is not determinative, and, when necessary, the appellate court can reclassify an item before applying the appropriate standard of review." *Id.* (citing *In re Helms*, 127 N.C. App. at 510, 491 S.E.2d at 675).

While we agree that the DHC's order is sufficient to show defendant's conduct violates the Rules (except as noted *supra*), we disagree that its order complies with the requirements that the findings of fact support the discipline imposed. The failure of the order in this case stems from a lack of findings in the adjudicatory phase of the order and from findings in the adjudicatory phase which do not support the conclusions made in the dispositional section of the order. As a result, we cannot conclude that the second and third requirements of *Talford* are met in this order.

In the order's dispositional section its deficiencies include the following:

1. The order found defendant's misconduct to be aggravated by the "[v]ulnerability of the victim, Linda David." Mrs. David may in fact be vulnerable, however, there is no finding of fact in the adjudicatory section which supports this characterization of Mrs. David. Therefore in reviewing the order, one simply does not know the factual predicate which forms this conclusion.

2. No factual findings support the mitigating factors that defendant had an absence of a prior disciplinary record.

3. While one may assume defendant contested the imposition of discipline, there are no findings of fact which support the conclusion that defendant refused to acknowledge the wrongful nature of his conduct other than the finding in paragraph 40 of the order that "Sossomon admitted that his conduct violated Rule 1.9[.]" Findings of

Fact and Conclusions Regarding Discipline 1(c) notes defendant's acknowledgment of his Rule 1.9 violation as part of an aggravating factor: "Except as to a single instance of misconduct, a refusal to acknowledge the wrongful nature of his conduct[.]" Conversely, the DHC made no parallel finding of this acknowledgment within the mitigating factors.

4. In its disciplinary order, the DHC found that Dupree and Wagner sustained economic loss due to the six-month delay in selling their respective properties to Shephard. No factual finding supports this conclusion.

5. In paragraph 5(b), the DHC found that Mrs. David "experienced, and continues to experience, emotional distress" tied to a number of factors with regard to lack of restrictions on the property, including "the cutting of the old growth forest on her former property." It is unclear how, even if defendant had placed single-family restrictions on the 19-acre tract, Mrs. David's distress arising from the loss of forest land could have been prevented by defendant. No prior findings of fact support this conclusion.

As a result, this Court cannot find that the order's expressed findings of fact adequately support the order's subsequent conclusions of law and that the expressed findings and/or conclusions adequately support the DHC's ultimate decision. Mindful that we may not substitute our judgment for that of the committee, we nonetheless deem the disciplinary findings inadequate in this regard. Thus, we hold that the order falls short of containing clear, cogent, and convincing evidence, which is needed to support the discipline imposed upon defendant.

"The statutory scheme for disciplining attorneys is set out in N.C.G.S. § 84-28." *Talford*, 356 N.C. at 635, 576 S.E.2d at 312. "Subsection (b) defines such a violation as 'misconduct,' and subsection (c) provides that any such misconduct 'shall be grounds for' one of the five sanctions listed in the statute." *Id.* at 636 n.3, 576 S.E.2d at 312 n.3. These five sanctions include: disbarment, suspension, censure, reprimand, and admonition. " '[S]o long as the punishment imposed is within the limits allowed by the statute this Court does not have the authority to modify or change it.' " *N.C. State Bar v. Nelson*, 107 N.C. App. 543, 552, 421 S.E.2d 163, 167 (1992), *aff'd per curiam*, 333 N.C. 786, 429 S.E.2d 716 (1993). When suspension is imposed,

there must be a clear showing of how the attorney's actions resulted in significant harm or potential significant harm to the

entities listed in the statute, *and* there must be a clear showing of why "suspension" [is] the only sanction option[] that can adequately serve to protect the public from future transgressions by the attorney in question.

*Talford,* 356 N.C. at 638, 576 S.E.2d at 313. We note as to finding 6 of the disciplinary findings that admonition was not considered by the DHC in making its determination with regard to lesser sanctions. This finding is mitigated by finding 7 which recites the committee has considered lesser sanctions. This Court holds this mixed finding does not meet the requirements of *Talford* or *Nelson,* that lesser sanctions be considered. The DHC must show a reviewing court that all potential lesser sanctions have been considered before discipline of a greater nature is imposed.

Since the DHC has shown significant harm to defendant's clients, we must now review the DHC's determination that suspension was the only sanction that could adequately serve to protect the public from defendant's future transgressions. *See Talford,* 356 N.C. at 638, 576 S.E.2d at 313. In Findings of Fact and Conclusions Regarding Discipline No. 7, the DHC gave four reasons for concluding in the affirmative: defendant's "pattern of continuing conduct"; defendant's "continuing course of multiple undisclosed offenses"; defendant's "refusal to appreciate or acknowledge the significance of the wrongful nature of the entirety of his misconduct"; and "entry of an order imposing less serious discipline would fail to acknowledge the seriousness of the offenses . . . and would send the wrong message to attorneys and the public regarding the conduct expected of members of the Bar of this State."

Only that portion of the third reason which refers to "refusal to appreciate or *acknowledge . . . the entirety* of his misconduct" is unsupported by the record, because it contradicts one of the previously listed aggravating factors: "*Except as to a single instance of misconduct,* a refusal to acknowledge the wrongful nature of his conduct." (Emphasis added.) Defendant acknowledged he violated Rule 1.9. The remainder of the third reason still shows a future harm to the public, as do the other reasons in their entirety.

Subsection (h) states there "shall be an appeal of right by either party from *any* final order" of the DHC. N.C. Gen. Stat. § 84-28(h) (2007) (emphasis added). Mindful that "[r]eview by the appellate division shall be upon matters of law or legal inference[,]" our review is limited only to whether suspension in this case was proper. *Id.*; *see*

*Talford,* 356 N.C. at 631, 576 S.E.2d at 309 (" 'G.S. 84-28(h) does not give a reviewing court the authority to modify or change the discipline *properly* imposed by the Commission.' ") (citation omitted). Therefore, we remand for the limited purpose of allowing the DHC to make proper findings of fact and conclusions of law and reconsideration of defendant's sanction pursuant to N.C. Gen. Stat. § 84-28(c). Whether to lessen the suspension or impose another appropriate measure of discipline is left to the discretion of the DHC.

## VII. Conclusion

We affirm the DHC's conclusion that it lacked jurisdiction to rule upon defendant's Rule 60(b) motion. We further affirm the DHC's orders showing defendant's conduct violated the Rules, with the exception of Conclusion of Law 2(e), which lacks a complete factual predicate. As discussed *supra*, the DHC's findings of fact in the adjudicatory phase fail to support the conclusions made in the dispositional section of the order, and thus the order falls short of containing clear, cogent, and convincing evidence supporting the discipline imposed upon defendant. We reverse and remand to allow the DHC to make proper findings of fact and conclusions of law and to reconsider defendant's sanction as it considers warranted.

Affirmed in part, reversed in part, and remanded.

Judges HUNTER, Robert C., and CALABRIA concur.