TYSON, Judge.
 

 *381
 
 Thomas S. Walton ("Husband") appeals from the trial court's 16 August 2017 order requiring him to pay $2,750.00 per month in alimony to Josi B. Walton ("Wife"). We affirm in part, reverse in part, and remand.
 

 I.
 
 Background
 

 Husband and Wife were married on 3 October 1998 and separated with the intent to remain separate and apart on 8 December 2015. The parties bore no children during their marriage. On 18 December 2015, Husband filed a complaint for equitable distribution and a motion for an
 
 ex parte
 
 temporary order of sequestration of the former marital residence. An
 
 ex parte
 
 temporary order of sequestration granting Husband the exclusive use of the marital residence was entered that same day.
 

 Wife filed an answer on 22 December 2015 and asserted counterclaims for post-separation support, alimony, equitable distribution, interim distribution, sequestration of the marital home, attorney's fees, and a temporary restraining order. The trial court entered an order on post-separation support on 23 February 2016.
 

 The parties' claims for equitable distribution and alimony were heard before the trial court over multiple hearings on 11-13 January 2017, 14 February 2017, and 11 April 2017. On 16 August 2017, the trial court entered an order on alimony and attorney's fees ("the Alimony Order"). The Alimony Order requires Husband to pay $2,750.00 per month in alimony to Wife. Husband filed timely notice of appeal of the Alimony Order.
 

 II.
 
 Jurisdiction
 

 Jurisdiction lies in this court pursuant to
 
 N.C. Gen. Stat. § 50-19.1
 
 (2017), which permits the immediate appeal of an order adjudicating a claim for alimony.
 

 *382
 
 III.
 
 Appellate Rule Violations
 

 We initially note multiple appellate rule violations regarding the record on appeal. The first page of Husband's contract with the transcriptionist to order a portion of the trial transcript is included within the record, but the second page is missing and it is unclear whether Husband contracted for the transcript within fourteen days of filing his notice of appeal on 14 September 2017. N.C. R. App. P. 7(a) ("Within fourteen days after filing the notice of appeal the appellant shall contract for the transcription of the proceedings or of such parts of the proceedings not already on file").
 

 On 30 November 2017, Husband filed a motion for extension of time to produce the transcript pursuant to Rules 7(b)(1) and 27(c) of the Rules of Appellate Procedure with the trial court. On the 15 December 2017, the trial court granted an extension until 26 December to produce the transcript. On 22 December, Husband filed a second motion with the trial court seeking an extension until 26 January 2018. The trial court allowed this second motion on the same day. The transcript was delivered on 24 January 2018.
 

 *783
 
 Rule of Appellate Procedure 7(b)(1) provide, in relevant part:
 

 [T]he trial tribunal, in its discretion and for good cause shown by the appellant, may, pursuant to Rule 27(c)(1), extend the time to produce the transcript for an additional thirty days.
 
 Any subsequent motions for additional time required to produce the transcript may only be made pursuant to Rule 27(c)(2) to the appellate court to which appeal has been taken.
 

 N.C. R. App. P. 7(b)(1) (emphasis supplied).
 

 Based upon Rule 7(b)(1), the trial court did not have jurisdiction to allow Husband's subsequent 22 December motion for extension of time, and the transcript was not timely filed.
 

 Id.
 

 As of 25 May 2018, Husband had not yet filed his appellant brief. On that date, Husband filed a motion for extension of time to file his brief, which this Court allowed by an order dated 29 May 2018. The Court's order gave Husband until 29 June 2018 to file his brief. On 25 June 2018, Husband filed a second motion for extension of time to file his brief. This motion indicated Husband had mistakenly only contracted to order transcripts for two of the five days of the trial on the parties' equitable distribution and alimony claims. Husband informed this Court that he had discovered his mistake and contracted with the transcriptionist to
 
 *383
 
 obtain the transcript for the three additional days of trial. By an order entered the 25 June 2018, this Court granted Husband until 30 July 2018 to file his brief.
 

 On 26 July 2018, Husband filed a third motion for extension of time to file his brief. Husband explained in his third motion that the transcriptionist informed him that she expected to deliver the complete transcript on the 26 or 27 of July. Once he obtained the complete transcript, Husband intended to file a motion to amend the record on appeal to incorporate the additional three days of testimony. By an order entered 30 July 2018, this Court granted Husband until 9 August 2018 to file his brief.
 

 On 7 August 2018, Husband filed a motion to amend the record on appeal. This motion requested inclusion of the transcript for the three additional days of trial and Husband's financial standing affidavit that had been submitted at trial. Husband subsequently filed his brief on 9 August. By an order entered 21 August 2018, this Court allowed Husband's motion to amend the record.
 

 The Supreme Court of North Carolina has emphasized that "a party's failure to comply with nonjurisdictional rule requirements normally should not lead to dismissal of the appeal."
 
 Dogwood Dev. & Mgmt. Co. v. White Oak Transp. Co.,
 

 362 N.C. 191
 
 , 198,
 
 657 S.E.2d 361
 
 , 365 (2008). This Court has held the failure to timely produce a trial court transcript is a nonjurisdictional defect.
 
 N.C. State Bar v. Sossomon
 
 ,
 
 197 N.C. App. 261
 
 , 270,
 
 676 S.E.2d 910
 
 , 917 (2009) (" Rule 7 is a nonjurisdictional defect");
 
 see
 

 Lawrence v. Sullivan
 
 ,
 
 192 N.C. App. 608
 
 ,
 
 666 S.E.2d 175
 
 , 181 (2008) ("we do not deem these nonjurisdictional failures [under N.C. R. App. P. 7(a)(1) ] on the part of plaintiff to be so egregious that they warrant dismissal of plaintiff's appeal").
 

 Our Supreme Court also explained in
 
 Dogwood
 
 that an appellate court should impose a sanction only when a party's nonjurisdictional rules violations rise to the level of a "substantial failure" under N.C. R. App. P. 25 or a "gross violation" under N.C. R. App. P. 34.
 
 Dogwood
 
 ,
 
 362 N.C. at 199
 
 ,
 
 657 S.E.2d at 366
 
 . Without a substantial or gross violation, this Court should not impose any sanction at all, but instead "the appellate court should simply perform its core function of reviewing the merits of the appeal to the extent possible."
 

 Id.
 

 Wife has not filed an appellee brief to argue Husband's rule violations are substantial or gross. Neither have Husband's rule violations hindered our ability to review the merits of the case. This Court previously held in
 
 Sossomon
 
 that an appellant's failure to timely file a trial transcript in not a "substantial failure" or "gross violation" to warrant
 
 *384
 
 the imposition of sanctions.
 
 Sossomon
 
 ,
 
 197 N.C. App. at 273
 
 ,
 
 676 S.E.2d at 918
 
 .
 

 Husband's failure to timely file the transcript and brief would have subjected his appeal to dismissal under Rule 25, had a motion to dismiss been filed by Wife.
 

 *784
 
 N.C. R. App. P. 25. In the absence of a substantial or gross violation of the appellate rules arising from Husband's failure to timely file the transcript and brief, and the absence of a filed motion to dismiss, we follow our Supreme Court's instruction in
 
 Dogwood
 
 , decline to impose sanctions, and "review[ ] the merits of the appeal to the extent possible."
 
 Dogwood
 
 ,
 
 362 N.C. at 199
 
 ,
 
 657 S.E.2d at 366
 
 .
 

 We strongly emphasize the importance of complying with the appellate rules and urge counsel to timely file materials within the applicable deadlines and follow the procedures specified in Rules 7(b)(1) and 27(c)(1)-(2) for obtaining extensions of time. N.C. R. App. P 7(b)(1), 27(c)(1)-(2).
 

 IV.
 
 Standard of Review
 

 Decisions regarding the amount of alimony are left to the sound discretion of the trial judge and will not be disturbed on appeal unless there has been a manifest abuse of that discretion. When the trial court sits without a jury, the standard of review on appeal is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts.
 

 Williamson v. Williamson
 
 ,
 
 217 N.C. App. 388
 
 , 390,
 
 719 S.E.2d 625
 
 , 626 (2011) (citations and quotation marks omitted). A trial court abuses its discretion when it renders a decision that is "manifestly unsupported by reason or one so arbitrary that it could not have been the result of a reasoned decision."
 
 Briley v. Farabow
 
 ,
 
 348 N.C. 537
 
 , 547,
 
 501 S.E.2d 649
 
 , 656 (1998) (citations omitted). The trial court's conclusions of law are reviewable
 
 de novo
 
 .
 
 Romulus v. Romulus
 
 ,
 
 215 N.C. App. 495
 
 , 498,
 
 715 S.E.2d 308
 
 , 311 (2011) (citation omitted).
 

 V.
 
 Analysis
 

 Husband argues the trial court abused its discretion by imputing income to him based upon his earning capacity for past part-time motorcycle repair work. Husband asserts no competent evidence supports that he suppressed his income to disregard his spousal support obligation. We disagree.
 

 *385
 
 The Alimony Order states, in relevant part:
 

 13. Plaintiff is employed by Corning Industries and grossed an average of $9,455.00 per month from Corning.
 
 In addition, Plaintiff grosses an average of $2,167.18 per month from his motorcycle repair business where Plaintiff charges a minimum of $35.00 per hour for labor, but, in 2015, Plaintiff charged $40.00 per hour 95% of the time for his labor rate.
 
 Plaintiff is typically reimbursed for parts of supply costs incurred, but taking into account some reasonable and ordinary business expenses overhead
 
 , the Court finds that Plaintiff has earned and has the ability to earn an average of $1,500 per month from motorcycle repair business. Plaintiff does not report [or] pay taxes upon his motorcycle repair income.
 
 The court finds that Plaintiff's total gross monthly income was $10,955 per month at the time of trial. (Emphasis supplied).
 

 14. Plaintiff testified that he stopped working on motorcycles January, 2016 due to no longer having possession of the marital home. The court finds that based from the evidence presented at trial in Plaintiff's Exhibit #13, the Plaintiff continued to purchase parts and other items from Chaparral Motorsports online. The court finds that Plaintiff continued to work on motorcycles or had the ability to do so and that his supplemental income should be added into his gross monthly income. Plaintiff went to the marital home numerous times after Defendant reoccupied it and same was evidence Plaintiff could have worked on motorcycles as usual
 
 . His failure to do so was in bad faith and in attempt to depress his income at trial and the Court specifically rejects Plaintiff's contention that he stopped working on motorcycles at the marital home because he was afraid Defendant would go into his shop and damage the motorcycles.
 
 Plaintiff had the only keys to the shop and Defendant never tried to get into the shop since the date of separation and never damaged any motorcycles.
 
 The Court finds $1,500 per month should be imputed to Plaintiff as motorcycle repair income.
 
 (Emphasis supplied).
 

 ...
 

 *785
 

 *386
 
 17....
 

 a. Plaintiff is highly skilled as a motorcycle mechanic and [his] services are in high demand. He has the current ability to make at least $1,500 per month in motorcycle repairs.
 

 b. In 2015, working part time, Plaintiff grossed $26,004 from motorcycle repair and has limited expenses which reduce his gross.
 

 c. Plaintiff works from a converted building on his property and has no overhead, carries no stock, has no rents or salaries and charges 10% on all parts ordered.
 

 d. His "Income Summary" lists no income for motorcycle repair. The Court finds that adds an average of $1,500 gross and net to his monthly income.
 

 A.
 
 Bad Faith
 

 Alimony awards are " 'ordinarily determined by [the supporting spouse's] income at the time the award is made.' "
 
 Lasecki v. Lasecki
 
 ,
 
 246 N.C. App. 518
 
 , 535,
 
 786 S.E.2d 286
 
 , 299 (2016) (emphasis omitted) (quoting
 
 Quick v. Quick
 
 ,
 
 305 N.C. 446
 
 , 457,
 
 290 S.E.2d 653
 
 , 660 (1982) );
 
 see also
 

 Moore v. Onafowora,
 

 208 N.C. App. 674
 
 , 678-79,
 
 703 S.E.2d 744
 
 , 748 (2010) (holding trial court properly computed a husband's income from all sources, which included the husband's "side business producing parties").
 

 The trial court may impute income based on the party's earning capacity if the trial court determines that the party suppressed his income in bad faith.
 
 Megremis v. Megremis
 
 ,
 
 179 N.C. App. 174
 
 , 182,
 
 633 S.E.2d 117
 
 (2006). Bad faith within the context of alimony means "that the spouse is not living up to income potential in order
 
 to avoid or frustrate
 
 the support obligation."
 
 Works v. Works,
 

 217 N.C. App. 345
 
 , 347,
 
 719 S.E.2d 218
 
 , 219 (2011) (citation and quotation marks omitted and emphasis supplied). However, "evidence of a voluntary reduction in income is insufficient, without more, to support a finding of deliberate income depression or bad faith."
 
 Pataky v. Pataky
 
 ,
 
 160 N.C. App. 289
 
 , 307,
 
 585 S.E.2d 404
 
 , 416 (2003) (citations omitted),
 
 aff'd in part, review dismissed in part
 
 ,
 
 359 N.C. 65
 
 ,
 
 602 S.E.2d 360
 
 (2004).
 

 Bad faith may be found "from evidence that a spouse has refused to seek or to accept gainful employment; willfully refused to secure or take a job; deliberately not applied himself or herself to a business
 
 *387
 
 or employment; [or] intentionally depressed income to an artificial low."
 
 Works,
 

 217 N.C. App. at 347
 
 , 719 S.E.2d at 219 (citation and quotation marks omitted).
 

 Pursuant to a sequestration order entered 23 February 2016, the marital home was sequestered in favor of Wife. The sequestration order allowed Husband to use a detached garage located at the marital residence as a repair shop.
 

 Husband asserts that "[t]he testimony at trial was clear that no motorcycle repairs had been done since the separation of the parties." Husband also asserts "It is not unreasonable that [he] would not have come onto the premises to work on a motorcycle when the house was sequestered to [Wife]."
 

 The testimony from the hearing provides competent evidence to support the challenged portion of the trial court's findings of fact 13 and 14. Husband testified that he normally charged $40.00 per hour for motorcycle repair work. The last time Husband did motorcycle repair work was a couple of weeks before he left the marital home. Husband had begun offering his motorcycle repair services for hire in "early 2001/2002[.]" Husband distributed flyers to advertise his motorcycle repair business. Husband testified that he formed the decision to not do any motorcycle repair work "[o]nce [he] moved out" of the marital home.
 

 He testified he did not continue his motorcycle repair business despite having access to his workshop because he did not feel safe leaving a customer's bike unattended where Wife could damage it. Husband also testified he keeps the workshop locked up and he was the only one who has a key. Plaintiff testified he had been to the workshop multiple times since the date of separation and he stored multiple items in the workshop including "[w]ood tools, battery chargers, jumper cables"
 

 *786
 
 and "electrical supplies, cleaning supplies, [and] air tanks."
 

 Wife testified she had not been in the detached garage workshop since the date of separation, does not have a key to the workshop, and has not done any damage to the exterior or interior of the workshop. Wife stated Husband has been to the workshop almost every day since the date of separation, sometimes two or three times a day, and that she has observed Husband bringing his and his girlfriend's vehicles to the workshop to work on them, but not motorcycles.
 

 The testimony elicited at the hearing provides competent evidence to support the challenged portions of findings of fact 13 and 14, including the trial court's finding Husband had acted in bad faith to depress his
 
 *388
 
 income.
 
 Williamson
 
 , 217 N.C. App. at 390, 719 S.E.2d at 626. The testimony provided a basis for a finding of bad faith because it constitutes competent evidence Husband had deliberately not applied himself to his motorcycle repair business after the date of separation or intentionally depressed his income.
 
 See
 

 Works
 
 , 217 N.C. App. at 347, 719 S.E.2d at 219 ;
 
 Pataky
 
 ,
 
 160 N.C. App. at 307
 
 ,
 
 585 S.E.2d at 416
 
 . Finding of fact 14 indicates the trial court expressly rejected Husband's contention that he had stopped working on motorcycles because he was afraid Wife would go into his workshop and damage customers' motorcycles.
 

 The decision by Husband to cease his motorcycle repair business contemporaneously with the decision by the parties to separate, in conjunction with the evidence that Wife could not access or damage his clients' motorcycles, is competent evidence to support an inference of bad faith.
 
 Williamson,
 

 217 N.C. App. 388
 
 , 390,
 
 719 S.E.2d 625
 
 , 626 ;
 
 see
 

 Works
 
 , 217 N.C. App. at 347, 719 S.E.2d at 219 ;
 
 see also
 

 Wolf v. Wolf
 
 ,
 
 151 N.C. App. 523
 
 , 527,
 
 566 S.E.2d 516
 
 , 519 (2002) (listing a spouse's "deliberately not applying himself to his business" and "intentionally depressing his income to an artificial low" as among several factors a court can consider to find bad faith).
 

 Husband may disagree with the credibility determination of the trial court, but "it is within the trial court's discretion to determine the weight and credibility that should be given to all evidence that is presented during the trial."
 
 Phelps v. Phelps
 
 ,
 
 337 N.C. 344
 
 , 357,
 
 446 S.E.2d 17
 
 , 25 (1994). Husband's argument is overruled.
 

 B.
 
 Wife's Earning Capacity
 

 Husband also argues the trial court should have imputed income to Wife based upon her earning capacity from making and selling chocolate.
 

 According to unchallenged finding of fact 32 in the Alimony Order:
 

 Defendant was a stay home wife and worked part time as a [Certified Nursing Assistant] when work became available. Defendant also started her own chocolates business but had to cease its operations when Plaintiff became bedridden for over a year recovering from a serious motorcycle accident. It was at this time that Defendant had to sacrifice the development and the career potential of her chocolate business in order to aid the Plaintiff in his recovery....
 

 During their marriage, part of the marital home was converted into a motorcycle repair shop for Plaintiff....
 

 *389
 
 During this time Plaintiff was able to build up business while continuing to work out of the marital home. Defendant was not provided the same opportunity to continue to operate her chocolate business or convert part of the marital home into a work space.
 

 The trial court is only permitted to impute income by considering a party's earning capacity if it finds that party has acted in bad faith.
 
 Megremis,
 

 179 N.C. App. at 182
 
 ,
 
 633 S.E.2d at 123
 
 . The trial court made no finding that Wife had acted in bad faith and did not err by failing to impute income to Wife.
 
 See
 
 id.
 

 Husband does not argue the trial court should have found Wife had acted in bad faith. Husband's argument that the trial court should have imputed income to Wife from her ability to make chocolate is without merit and overruled.
 

 C.
 
 Husband's Girlfriend's Contribution
 

 The trial court's findings of fact and the evidence from the hearing show Husband
 
 *787
 
 resides with a girlfriend ("Girlfriend"). In its Alimony Order, the trial court reduced several of Husband's claimed monthly expenses by one-half by imputing to him what the court deemed he should be receiving as contribution from Girlfriend. Finding of fact 17 states, in relevant part:
 

 17. ... The Court finds Plaintiff's "Income Summary" introduced at TAB 7 of his trial notebook to be very problematic because it does not include motorcycle repairs shop income or any contribution toward household expenses from Plaintiff's live in girlfriend.... The Court also finds Plaintiff's financial standing affidavit introduced at Tab 8 of his trial notebook to be very problematic as it contains several expenses the amounts of which the Court finds not to be reasonable, and others for which Plaintiff
 
 should be
 
 receiving contribution from [Girlfriend]. Examples are:
 

 ...
 

 f. Does not include Plaintiff voluntarily paying all of the following expenses for himself and [Girlfriend]
 
 with no regular contribution from [Girlfriend]
 
 :
 

 1. Mortgage $714 = ½
 

 2. Homeowner's insurance $112 = ½
 

 3. Water/Trash $25 = ½
 

 4. Cable $81 = ½
 

 *390
 
 5. Trash collection $46 = ½
 

 6. Laundry/Dry cleaning $63 = ½
 

 7. Groceries $225 = ½
 

 8. Meals out $150 = ½
 

 $1,416 = ½ [Girlfriend] should have to pay
 

 Said contribution by [Girlfriend] would add $1,416 back to Plaintiff's monthly net income. (Emphasis supplied)
 

 Husband testified at the hearing that Girlfriend does help him pay some expenses, but she does not contribute a regular percentage, and "She helps me as best she can." The trial court also made no findings regarding Girlfriend's income or ability to contribute the one-half of Husband's expenses the trial court had found she "should be" paying.
 
 See
 

 Broughton v. Broughton
 
 ,
 
 58 N.C. App. 778
 
 , 786,
 
 294 S.E.2d 772
 
 , 778 (1982) (holding it was proper for the trial court to consider husband's new wife's income to determine his ability to pay alimony to former wife, because she was a member of the husband's household (citing
 
 Wyatt v. Wyatt
 
 ,
 
 35 N.C. App. 650
 
 , 652,
 
 242 S.E.2d 180
 
 , 181 (1978) ) ).
 

 It appears the trial court has questioned both the reasonableness of Husband's expenses because of his live-in Girlfriend and imputed what it believed to be her share of the expenses as income. While the trial court could have reduced the reasonable expenses by the amount that it found Husband's expenses were increased by having Girlfriend live with him, it cannot reduce his expenses by that amount and impute that as income that should be paid by Girlfriend. This would be double penalizing Husband; the trial court must choose one option or the other. Additionally, the trial court erred by imputing to Husband the amount Girlfriend should be paying without finding Husband acted in bad faith to inflate his expenses, or reduce his income, by failing to seek contribution from her.
 
 See
 

 Lasecki
 
 ,
 
 246 N.C. App. at 535
 
 ,
 
 786 S.E.2d at 299
 
 ("The trial court may impute income to a party
 
 only upon
 
 finding that the party has deliberately depressed his income or deliberately acted in disregard of his obligation to provide support[.]" (citation and quotation marks omitted and emphasis supplied) ).
 

 The portion of finding of fact 17 indicating Girlfriend should be contributing $1,416 monthly to Husband for expenses is not supported by any competent evidence. The trial court calculated Husband's net monthly income to be $9,133.76, which includes the $1,416 the trial court found Girlfriend should be contributing monthly.
 

 *391
 
 We remand the matter to the trial court to determine whether Husband inflated his monthly expenses in bad faith by failing to seek contribution from Girlfriend or, if not, to determine Husband's monthly income, expenses, and alimony obligation without imputing $1,416 to him as a monthly contribution from Girlfriend.
 
 See
 

 Works
 
 , 217 N.C. App. at 348, 719 S.E.2d at 219-20 ;
 
 Nicks v. Nicks
 
 ,
 
 241 N.C. App. 487
 
 , 504,
 
 774 S.E.2d 365
 
 , 378 (2015) (remanding for trial court to determine whether spouse acted in bad faith before it imputed income).
 

 *788
 
 Finding of fact 17 also indicates the trial court reduced by one-half seven other monthly expenses Husband had claimed in his financial standing affidavit:
 

 g. Plaintiff has the following questionable expenses which the Court finds are not reasonable or are not being paid in their current amount, and reduces down to ½:
 

 1. Cell Phone $183
 

 2. Hair/Nails $100
 

 3. Vacation $154
 

 4. Gifts $83
 

 5. Gas $362
 

 6. Uninsured medical bills $141
 

 7. Church pledge $42
 

 $1,065 reduced to $533
 

 "The determination of what constitutes the reasonable needs and expenses of a party in an alimony action is within the discretion of the trial judge, and [the judge] is not required to accept at face value the assertion of living expenses offered by the litigants themselves."
 
 Whedon v. Whedon
 
 ,
 
 58 N.C. App. 524
 
 , 529,
 
 294 S.E.2d 29
 
 , 32-33 (1982) (citing
 
 Clark v. Clark
 
 ,
 
 301 N.C. 123
 
 , 131,
 
 271 S.E.2d 58
 
 , 65 (1980) ). "Implicit in this is the idea that the trial judge may resort to [her] own common sense and every-day experiences in calculating the reasonable needs and expenses of the parties."
 
 Robinson v. Robinson
 
 ,
 
 210 N.C. App. 319
 
 , 329,
 
 707 S.E.2d 785
 
 , 793 (2011) (alteration in original and citation omitted).
 

 Although, the trial court was not required to accept Husband's claimed expenses at face value, finding of fact 17(g) provides no basis for why the trial court determined one-half of those expenses were not reasonable.
 
 See
 
 id.
 
 ;
 

 Williamson
 
 , 217 N.C. App. at 390, 719 S.E.2d at 626 ("the standard of review on appeal is whether there was competent evidence to support the trial court's findings of fact"). By reducing
 
 *392
 
 Husband's claimed expenses by one-half without any finding explaining why they were unreasonable, and by imputing income to Husband based upon the girlfriend's failure to pay her share, the trial court effectively penalized Husband without a finding of bad faith.
 

 Upon remand, the trial court must make findings of fact explaining why one-half of Husband's claimed expenses were unreasonable
 

 VI.
 
 Conclusion
 

 The trial court did not err in imputing income to Husband after finding he had acted in bad faith by failing to continue the operation of his motorcycle repair business. The trial court did not err by declining to impute income to Wife. The trial court erred by imputing to Husband's income the amount it determined Girlfriend should be contributing without finding bad faith on Husband's part by not seeking contribution or considering Girlfriend's ability to pay.
 

 We remand the matter to the trial court to determine whether Husband inflated his expenses in bad faith by failing to seek contribution from Girlfriend or, if not, to re-compute the amount of his alimony obligation in accordance with this opinion. The trial court is to also make findings of fact explaining why it determined half of Husband's claimed expenses were not reasonable.
 
 It is so ordered
 
 .
 

 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 

 Judges INMAN and ARROWOOD concur.